TORPY *v.* BETTS.                    |123    239
                                                   |d134   431

WILLS—PERPETUITIES.
   A will devising a life estate to testator's wife, remainder to a
     son on condition that he pay to a daughter a specified sum of
     money, and providing that, in case of the death of son or
     daughter without issue before the death of the wife, the sur-
     vivor shall take the fee, and that, in case of the death of both
     without issue before the death of the wife, the latter's life
     estate shall become a fee-simple, does not suspend the power
     of alienation for an unlawful period, since, if the provision
     as to payment be a condition precedent, there would never-
     theless be persons *in esse* at the death of the wife who, by
     joining, could convey the fee.

Appeal from Ionia; Davis, J.    Submitted February 1,
1900.   Decided March 6, 1900.

Bill by Frank Torpy against Lenora Betts, Stephen
Hunt, and Grace May Hunt, to construe the will of. John
Betts, deceased.    From a decree for complainant, defend-
ants appeal.    Affirmed.

*R. A. Hawley,* for complainant.

*W. H. Mains* and *George E. & M. A. Nichols,* for
defendants.

HOOKER, J.    Lenora Betts was at one time the wife of
one Torpy.   She was afterwards married to John Betts.
Frank and Grace Torpy were born to her while she was
the wife of Torpy.   Her marriage with Betts occurred in
1891, and he died in 1894, leaving a will containing the
following provision, viz. :

"*First.* I do give and bequeath my entire real property
of which I may die seised and possessed, and which
now mainly consists of the east one-half ($\frac{1}{2}$) of the
northwest one-quarter ($\frac{1}{4}$) of section thirty-two (32), town

five (5) north, of range six (6) west (being in the township of Sebewa, county of Ionia, and State of Michigan), with all the appurtenances and hereditaments thereto, to my beloved wife, Lenora Betts, for the term and time of her natural life, with all the emoluments, gains, and profits accruing therefrom, with full authority during said lifetime to make any improvement or alteration in appurtenances of the said real property that she may desire. Upon the death of my said wife, Lenora Betts, then said real property is to become the property in fee simple of her son, Frank Torpy, subject, however, and the bequest is specially conditioned upon the payment by said Frank Torpy or his representatives of the full sum of five hundred dollars in money to Grace May Torpy, daughter of my said wife, Lenora Betts, or her legal representatives. In case, however, that either said Frank Torpy or said Grace May Torpy shall die and leave no issue before the death of my said wife, Lenora Betts, then, upon the death of my said wife, Lenona Betts, either said Frank Torpy or said Grace May Torpy, as may survive, shall take in fee simple the entire real property of which I may die seised and possessed. And in case both said Frank Torpy and said Grace May Torpy shall both die without issue before the death of my said wife, Lenora Betts, then, and in that case only, shall the said property go to such person, persons, or interest as shall be my said wife, Lenora Betts', last will and testament, or otherwise by indenture disposed of by her; it being my intention that in case of such death of both said Frank Torpy and Grace May Torpy, without issue to either, before the death of my said wife, Lenora Betts, then the life estate heretofore bequeathed to my said wife, Lenora Betts, shall become an estate in fee-simple absolute."

Grace married Stephen Hunt, and after the death of Betts they continued to live with the widow upon the premises. The bill in this cause was filed by Frank Torpy, who claims to be remainder-man in fee, to restrain waste, and to obtain a construction of the will. The defendants claim, under an answer in the nature of a cross-bill, that the provision of the will that gives the fee to the complainant on the termination of the life estate is void under the statute which prohibits the suspension of the power of alienation for a longer period than the con-

tinuance of two lives in being at the creation of the estate. See 3 Comp. Laws 1897, §§ 8796, 8797.

If we were to hold, as contended by the defendants, that the condition requiring Frank Torpy to pay $500 to Grace is a condition precedent, the remainder does not vest in any one until the termination of the life estate. This is the necessary conclusion from the case of *L'Etourneau* v. *Henquenet*, 89 Mich. 428 (50 N. W. 1077, 28 Am. St. Rep. 310). In that case it was said that the termination of such a remainder ( *i. e.*, a vested remainder) by death of the holder created a contingent remainder in the surviving children designated in the will, and the heirs of any deceased child, and that such contingent remainder " could not vest until the termination of the life estate, because until then it could not be known who would be entitled to it as heirs or survivors." In the present case there is no way of knowing who is to be entitled to the remainder in fee until the widow shall die. Upon the termination of the life estate, the suspension of the power of alienation would at once end, because, if Grace or her issue should survive, it would be in the power of Frank Torpy or his surviving issue to vest the estate by payment, or an absolute conveyance could be made by a deed in which all parties interested should join. There are many cases cited in complainant's brief supporting the rule that the statute does not apply when, under the terms of the instrument, it is certain that a title can be conveyed by the joint action of parties interested. Thus, in *Murphy* v. *Whitney*, 140 N. Y. 541 (35 N. E. 930, 24 L. R. A. 123), where several brothers and sisters had entered into an agreement to hold land for their joint use, the share of each dying to vest in the survivors, and on the death of the last the whole to go to the son of one brother, it was held that this agreement did not create a perpetuity, because the survivors, with such son, could convey a perfect title at any time; the court using the following language:

"The absolute power of alienation is not suspended, because there were at all times persons in being who
123 MICH.—16.

could convey an absolute fee in possession. All the brothers and sisters, uniting with the plaintiff, could at any time have conveyed a perfect, indefeasible title to the real estate."

In *Sawyer* v. *Cubby*, 146 N. Y. 192 (40 N. E. 869), the following is found:

"The statutory test of what constitutes a suspension of the power of alienation as to real estate, and of absolute ownership as to · personal property, is that it occurs only when there are no persons in being by whom an absolute estate in possession can be conveyed. Tried by that test, I think we shall find that there never was a moment after the death of the testatrix when a good title in present possession might not have been given to the legacy, and the property covered by it, save only during the continuance of the trust created by the sixth clause. Certainly the interest of Cubby, although future and contingent, vested as a right, and so was not inalienable by him; for, even in the case of land, expectant estates, which include those which are future and contingent, are declared by the statute to be descendible, devisable, and alienable, in the same manner as estates in possession."

In 18 Am. & Eng. Enc. Law, on page 377, the author says:

"The statute declares that it [suspension of power of alienation] exists when there are no persons in being by whom an absolute fee in possession can be conveyed. It is clear that, in itself, this permits all dispositions of succeeding life estates, however numerous, with contingent limitations over which may not vest until beyond even the period of the English rule, provided the limitations are to persons in being. * * * In fact, it is an accurate summary of the whole to say that, leaving out of consideration the clause against successive life estates, there are but two modes in which the absolute power of alienation can be suspended, viz., by an express trust, or power in trust, of such a character that the land cannot be alienated during its continuance, or by a contingent limitation."

Our own cases are in harmony with this doctrine. *Thatcher* v. *St. Andrew's Church*, 37 Mich. 264; *Case* v. *Green*, 78 Mich. 540 (44 N. W. 578); *State* v. *Holmes*, 115 Mich. 456 (73 N. W. 548).

In *Case* v. *Green*, William Case leased to Hiram and Rebecca Case for their lives, and after death to their son, Adelbert Case, for life. Here were clearly three persons holding life estates, but the instrument was held valid because an absolute fee might be conveyed by the action of all in conjunction with the owner of the rever- sion.

The provision of the will should in such case ( *i. e.*, if the condition be precedent) be considered to be one creating several future estates, to take effect in the alternative, as permitted by 3 Comp. Laws 1897, § 8807. It matters not whether the estate may ultimately vest in one unborn at the time of the creation of the estate, for the existence or nonexistence of such a person has no effect upon the suspension of alienation, which must surely terminate upon the death of the life tenant. Hers is the life selected to measure the period of suspension, and the testator had the right to make such selection. See *Crooke* v. *County of Kings*, 97 N. Y. 421; *Bailey* v. *Bailey*, Id. 460; Chapl. Susp. Alien. §§ 222, 227, 230.

If it be contended that a remainder cannot be devised to one not *in esse* at the time of the creation of the estates, an answer is found in section 8810, which clearly recognizes it. Moreover, if an estate must go to persons *in esse*, the power of alienation would never be suspended, as, by joining, the owners of the various estates could always convey the fee. In 2 Washb. Real Prop. (5th Ed.) 797, it is said that a remainder in fee after the expiration of two lives in being at the testator's death may be created in favor of one not in being at that time, and a second limitation may be good to one not in being, who may be living at the death of the first remainder-man, if such remainder-man die under the age of 21; citing *Manice* v. *Manice*, 43 N. Y. 303. See, also, Gray, Perp. § 294; also, §§ 164, 170, 392, 393. In *Gulliver* v. *Wickett*, 1 Wils. 105, it is said, "The number of contingencies are not material, if they are all to happen within a life in being," etc Chapl. Susp. Alien. § 230; *Crooke* v. *County of Kings, supra.*

We think it clear that the will is not invalid as in violation of the statute against perpetuities. As counsel agree that this is the only question before us, we have no occasion to discuss other questions that might otherwise be involved.

The decree is affirmed, with costs.

The other Justices concurred.