# IN THE MATTER OF THE ESTATE OF JOHN D. GRAY, Deceased.

## JOHN HENDERSON et al. v. JULIA ANN GRAY et al.

(— L.R.A. (N.S.) —, 146 N. W. 722.)

**Will — devise — testator's intention — life interest — real property — un-conditional estate — charge impressed on property — subject to — legacy — payment — security.**

1. In paragraph 2 of his will, testator devised a life estate in all his real property to his wife, and in paragraph 3 he made the following devise to his son Arthur:

"Subject to the aforesaid life interest of my wife, Julia Ann Gray, and the following further provisions: (a) That within two years next succeeding the death of my wife, Julia Ann Gray, he pay or cause to be paid unto by daughter, Ruth Beleal, or her heirs, the sum of fifteen hundred dollars ($1,500.00); (b) that he pay or cause to be paid unto my daughter Myra Pieldman, or her heirs, within two years next succeeding the death of my wife, Julia Ann Gray, the sum of fifteen hundred dollars ($1,500.00). I will and bequeath unto my son, Arthur Pierce Gray, or his heirs, the north one-half of section twenty-eight, township one hundred forty, range sixty."

No provision is made in the will for a devise over in the event Arthur should decline to accept such devise.

*Held,* construing the will in its entirety, that the testator's intention was to vest in such son an unconditional estate in such property at his death, subject to the life estate in his widow, and subject, further, to a charge impressed thereon in favor of his two daughters, Ruth and Myra, as security for the payment to each, within two years from the death of his widow, of the legacy therein bequeathed.

**Devise — condition precedent — power of alienation — suspension.**

2. Such devise to the son not being made subject to a condition precedent, there is no basis whatever for the contention of respondents that the same operates to suspend the power of alienation.

---

Note.—As to the remedies for the enforcement of a legacy when charged on devise, see note in 30 L.R.A. (N.S.) 815.

On the question of the admissibility of extrinsic evidence for purpose of charging property with payment of legacies or debts where the will is silent on that point, see note in 19 L.R.A. (N.S.) 457.

27 N. D.—27.

**Rules of construction — aids to courts — intention of testator — effect to, must be given.**

3. Certain well-settled rules of construction are referred to and applied in the opinion, all of which were designed as aids to the courts in determining and giving effect to the real intent of the testator, which in all cases is the sole object in view.

Opinion filed March 30, 1914.   Rehearing denied April 13, 1914.

Appeal from District Court, Barnes County; *J. A. Coffey,* J.

From a final order adjudging void certain provisions of a will devising real property, upon the ground that the same operate to unlawfully suspend the power of alienation, the petitioners for the probate of such will appeal.

Reversed.

*Page & Englert,* for appellants.

The will here in question does not operate to suspend the power of alienation.   Hagen v. Sacrison, 19 N. D. 160, 26 L.R.A.(N.S.) 724, 123 N. W. 518; Robert v. Corning, 89 N. Y. 226; Dillenbeck v. Dillenbeck, 134 App. Div. 720, 119 N. Y. Supp. 134; Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Garvey v. McDevitt, 72 N. Y. 556; Re Heberle, 155 Cal. 723, 102 Pac. 935; Re Pforr, 144 Cal. 121, 77 Pac. 825.

The devise to the son was subject to the life interest of the widow, and is an unconditional estate.   Torpy v. Betts, 123 Mich. 239, 81 N. W. 1094; Murphy v. Whitney, 140 N. Y. 541, 24 L.R.A. 123, 35 N. E. 930.

The absolute power of alienation is not suspended, because there were at all times persons in being who could convey an absolute fee in possession.   Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; 18 Am. & Eng. Enc. Law, 377; Thatcher v. St. Andrew's Church, 37 Mich. 264; Case v. Green, 78 Mich. 540, 44 N. W. 578; State v. Holmes, 115 Mich. 456, 73 N. W. 548.

The testator had the right to select the life that should measure the period of suspension.   Crooke v. King County, 97 N. Y. 421; Bailey v. Bailey, 97 N. Y. 460; Chaplin, Suspension of Power of Alienation, §§ 222, 227, 230; Case v. Green, 78 Mich. 540, 44 N. W. 578.

The absolute power of alienation is not suspended in violation of the

statute of perpetuities so long as there are persons in being by whom an absolute interest in possession can be conveyed. Rev. Codes 1905, § 4745; Torpy v. Betts, supra; 18 Am. & Eng. Enc. Law, 377; Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Garvey v. McDevitt, 72 N. Y. 556; Nellis v. Nellis, 99 N. Y. 505, 3 N. E. 59; Murphy v. Whitney, 140 N. Y. 541, 24 L.R.A. 123, 35 N. E. 930; Baldwin v. Palen, 24 Misc. 170, 53 N. Y. Supp. 520; Re Campbell, 149 Cal. 712, 87 Pac. 573; Fitz Gerald v. Big Rapids, 123 Mich. 281, 82 N. W. 56.

Where the beneficiaries are some permanent institution, or one to be created, and not natural persons in being, such provisions are void. Murphy v. Whitney, 140 N. Y. 541, 24 L.R.A. 123, 35 N. E. 930; Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Fitz Gerald v. Big Rapids, supra.

If there are in existence persons who, by joining in a conveyance, or by successive releases, are able to pass the whole estate, the law is complied with. 18 Am. & Eng. Enc. Law, 377; Rong v. Haller, 109 Minn. 191, 26 L.R.A.(N.S.) 825, 123 N. W. 471, 806; State v. Holmes, 115 Mich. 456, 73 N. W. 548; Rose v. Rose, 4 Abb. App. Dec. 108; Yates v. Yates, 9 Barb. 324; Fitz Gerald v. Big Rapids, supra; Booth v. Baptist Church, 126 N. Y. 215, 28 N. E. 238; Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 938; Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869.

The amounts to be paid other beneficiaries by the beneficiaries under the will are mere charges upon the land. Radley v. Kuhn, 97 N. Y. 26; 30 Cyc. 1504.

*Taylor Crum,* for respondent.

The creation of the limitation or condition in a will takes place at the death of the testator. The absolute power of alienation is equivalent to the power of conveying an absolute fee. Re Walkerly, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 776; Tucker v. Tucker, 5 N. Y. 417.

Any conveyance by the heirs would be liable to be defeated by the nonexercise of the conditions precedent imposed upon the sons. The executors could not convey an absolute title in fee. The will is illegal. Garvey v. McDevitt, 72 N. Y. 564.

By the terms of the will there is left a period of two years, during which the power of alienation might be suspended. Cruikshank v.

Home for the Friendless, 113 N. Y. 337, 4 L.R.A. 140, 21 N. E. 65; Haynes v. Sherman, 117 N. Y. 433, 22 N. E. 939.

The only persons who can convey a complete title are those who are actually in being at the time when the sale is made. Trowbridge v. Metcalf, 5 App. Div. 318, 39 N. Y. Supp. 245.

In the case at bar, there are conditions precedent which are uncertain of fulfilment. State v. Holmes, 115 Mich. 456, 73 N. W. 549; Booth v. Baptist Church, 126 N. Y. 215, 28 N. E. 239; Leonard v. Burr, 18 N. Y. 107; Cruikshank v. Home for the Friendless, 113 N. Y. 337, 4 L.R.A. 140, 21 N. E. 64; Rong v. Haller 109 Minn. 191, 26 L.R.A. (N.S.) 825, 123 N. W. 471, 806; Re Walkerly, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 777; Crew v. Pratt, 119 Cal. 139, 51 Pac. 42; Whitney v. Dodge, 105 Cal. 197, 38 Pac. 636.

The duration of designated lives must always be, and be made, the ultimate measure of duration. Other measures may be adopted, but it matters not, so long as they cannot extend the period of suspension beyond designated lives. Re Hendy, 118 Cal. 657, 50 Pac. 753; Re Cavarly, 119 Cal. 406, 51 Pac. 630; Hawley v. James, 16 Wend. 120.

FISK, J. In April, 1911, one John D. Gray died testate, leaving certain real and personal property in Barnes county. The provisions of his will, so far as material to the questions presented, are as follows:

"II. Unto my wife, Julia Ann Gray, I will and bequeath all of the personal property in my possession at the time of my death and a life interest in and to my real estate, more particularly described as the north one-half of section twenty-eight, and the southeast one-fourth of section twenty-one, all in township one hundred forty of rang'' sixty in Barnes county, North Dakota (N.$\frac{1}{2}$ 28, and S.E.$\frac{1}{4}$ 21–140–60), it being my wish and direction that she retain full possession and enjoy the income from said real estate during the period of her natural life, but this interest and title shall terminate promptly at her death.

"III. Subject to the aforesaid life interest of my wife, Julia Ann Gray, and the following further provisions: (a) That within two years next succeeding the death of my wife, Julia Ann Gray, he pay or cause to be paid unto my daughter, Ruth Beleal, or her heirs, the sum of fifteen hundred dollars ($1,500); (b) that he pay or cause to be paid unto

my daughter, Myra Pieldman, or her heirs, within two years next succeeding the death of my wife, Julia Ann Gray, the sum of fifteen hundred dollars ($1,500), I will and bequeath unto my son, Arthur Pierce Gray, or his heirs, the north one-half of section twenty-eight, township one hundred forty, range sixty, (N.$\frac{1}{2}$ 28–140–60).

"IV. Subject to the aforementioned life interest of my wife, Julia Ann Gray, and the further provision that within the two years next succeeding the death of my wife, Julia Ann Gray, he pay or cause to be paid unto my son, James Burley Gray, or his heirs, the sum of five hundred dollars ($500), I will and bequeath unto by son, George H. Gray, the southeast quarter of section twenty-one, in township one hundred forty, of range sixty (S.E.$\frac{1}{4}$ 21–140–60)."

Thereafter a petition in due form was presented to the county court for the probate of such will, and one Rachel M. Zellers, a daughter of the deceased, opposed the allowance of such probate upon the ground, among others, "that said alleged will is void, as the intent of the testator to give the remainder in fee to heirs of Julia Ann Gray is legally impossible, as the intention of the testator would put the freehold in abeyance; that no provision is made for any disposition of the decedent's real estate in case Arthur Pierce Gray and George H. Gray, or either of them, fail to pay certain money to other heirs at law; and that there is an attempt to suspend alienation longer than the continuance of the lives in being at the testator's death. For a period of two years after the death of Julia Ann Gray, the real estate attempted to be devised might belong to no one, there being no devisee who has not attained his majority, as appears by the petition for proof and probate of the alleged will."

The county court overruled such objection and allowed the probate of the will, from which decision Rachel M. Zellers appealed to the district court, which court reversed the decision of the county court, holding such will of no validity in so far as the testator attempted to devise the real property therein described. From such decision this appeal is prosecuted.

Counsel, in their original briefs and orally, argued the case mainly upon the assumption that the devises to Arthur Pierce Gray and to George H. Gray were subject to *conditions precedent,* and that as a consequence the decision must turn upon the question of law as to

whether by paragraphs 3 and 4 of the will the testator attempted to suspend the power of alienation for any period in excess of that permitted by the Code, §§ 4744 and 4745, which are as follows:

"Sec. 4744. The absolute power of alienation cannot be suspended by any limitation or condition whatever for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in the single case mentioned in § 4772."

"Sec. 4745. Every future interest is void in its creation, which by any possibility may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed."

Appellants' counsel earnestly contend that under the paragraphs of the will aforesaid the power of alienation is not unduly suspended contrary to § 4745. Numerous authorities are cited and relied upon in support of their contention, but their chief reliance is upon the case of Torpy v. Betts, 123 Mich. 239, 81 N. W. 1094, decided under a statute in all respects like the statutes of North Dakota above quoted.

We shall not take the time nor the space necessary to enable us to analyze such case, nor any of the cases cited in the original briefs, for we do not deem them in point, nor in any respect controlling in the case at bar. We merely remark, in passing, that upon the law point argued we would have no difficulty in reaching a conclusion favorable to the respondent.

After careful consideration of the case we become impressed with a belief that counsel had overlooked and failed to brief and argue what we were inclined to deem the controlling rule of construction; viz., that the devises to Arthur Pierce Gray and to Geo. H. Gray were not upon condition either precedent or subsequent, but that the same were unconditional and made subject merely to a charge in favor of the legatees, Ruth Beleal, Myra Pieldman, and James Burley Gray. Thereupon we requested counsel to furnish supplemental briefs upon this phase of the case, which request has been complied with. A careful consideration of such supplemental briefs has served to confirm the correctness of our first impressions. As we construe the will, the premise upon which both counsel first argued the case in this court, to wit, that such

real property was devised to the sons, Arthur Pierce and George H. Gray, upon *conditions precedent* that they should pay certain bequests to Ruth Beleal and Myra Pieldman, daughters, and to James Burley Gray, a son of the testator, is clearly erroneous. If correct in this conclusion it necessarily follows that such devises were made either upon conditions subsequent or merely subject to a charge upon the estates devised in favor of such legatees for the amounts of such legacies, and in either event the question argued in the original briefs, of the suspension of the power of alienation, cannot possibly be involved. We are firm in the belief that the testator merely intended to make such legacies charges against the estates. We are confirmed in this belief by the provisions of the will. On the theory that the testator intended to make such devises subject to *conditions precedent,* it is quite natural that he would have made some provision for the vesting of title elsewhere in the event such conditions were not complied with, but the will is silent in this respect. Furthermore, such conditions could not be complied with until after the termination of the life estate in the mother, for such are the plain provisions of the will; and yet no provision is made for an abiding place for the title during the interim between the mother's death and a compliance with such conditions, which might be a period of two years. If held to be conditions precedent, it is, of course, well established that no estate could pass to the devisees until the conditions were complied with. Again, it clearly was testator's intent to bequeath to Ruth Beleal, Myra Pieldman, and James Burley Gray the sums stated, yet such intent must fail if the devises to Arthur and George fail either through noncompliance with the alleged conditions precedent, or otherwise. Moreover, the fact that the testator fixed a period of two years from and after the death of the mother in which such legacies could be paid by Arthur and George to Ruth, Myra, and James, lends support to our construction of the will, for it is very improbable that the testator, if he intended to withhold the vesting of such estates in Arthur and George during the interim which might occur, would not have made some provision for the occupancy and control, as well as the ownership, of the property during such period. When we consider the entire will with a view of determining the intention of the testator, which is the sole object aimed at, we are forced to conclude that, subject to the life estate in the mother,

the devises operated to vest title in Arthur and George unconditionally at the death of the testator, but that they took thereunder subject to a charge impressed upon their estates for the payments of the legacies aforesaid within two years after the mother's death. Well-settled rules of construction, as well as the authorities, lend ample support to our views. Brief reference to such rules and to a few authorities will here be made.

Page on Wills, § 461, announces a correct rule of construction as follows: "The sole object and intention of the rules upon the subject of construction is to ascertain the intention of the testator. As was said by Chief Justice Marshall: 'The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly conceived, and is not contrary to some positive rule of law, it must prevail.'

"The purpose of the court in construing a will is solely to ascertain the intention of the testator as the same appears from a full and complete consideration of the entire will.

"The intention of testator is said, in a recent Virginia case, to be the 'life and soul of a will,' and if this intention is clear, and is not in violation of any rule of law, it must govern with absolute sway."

In § 465 this author also says: "Testator will be presumed to know the limits imposed by law upon his testamentary power, and to strive to comply with those limits. Thus, if one construction of the will will cause it to violate the rule against perpetuities, and another construction will make it comply with this rule, the construction which makes it comply with this rule will be preferred." And in § 466 we quote: "It will be presumed that a person when he makes and publishes a will intends to dispose of his whole estate, unless the presumption is rebutted by its provisions or evidence to the contrary." And in § 752 we quote the following: "Devises are often made to one with the direction that he pay a certain sum to another. Whether the sum thus to be paid is made a charge upon the land by such gift is a question involving some difference of judicial opinion; but it can, in general, be determined by the same principles as those which determine whether a direction to support is a charge upon property devised or not. A gift to one, subject to the payment of a specified amount to another, is held to make the payment of such amount a charge upon the land devised.

. . . Gifts of this sort are held to impose charges on the land de-vised, rather than to constitute conditions precedent, when there is no gift over in case of failure to pay the beneficiary designated. In cases of doubt the presence or absence of a gift over is held to determine whether the will creates a charge or imposes a condition precedent."

See also Rood, Wills, § 623.

In 40 Cyc. 1683, we find the following accurate statement relative to how a condition in a will can be created: "To create a condition in the case of a devise or bequest, apt words to that end must be used. It is not necessary, however, that any particular form of words shall be employed, but whenever it clearly appears from the language used, aid-ed, it may be, in a proper case, by extrinsic evidence, that it was the intention of the testator to impose a condition precedent or subsequent, such intention will be given effect. On the other hand, even the use of the words 'upon condition,' although they are of course most ap-propriate, will not create a condition if a contrary intent appears from the will. The intention to create a condition must clearly appear, for the courts will not construe a testator's words as importing a condition of a different meaning can be fairly given to them,"—citing numerous authorities in support of the text.

At page 1697 of the same treatise the author distinguishes a con-dition from a charge or trust in the following terse language: "The doctrine has been announced in many cases that a condition for the benefit of a person, particularly where it is a mere direction enjoining some act upon a devisee or legatee, without any expressed or clearly im-plied intention that its breach shall work a forfeiture of the estate, should be regarded as creating a charge or trust upon the land or fund in such person's favor, to be enforced as other charges and trusts, and not as a limitation upon the estate or interest devised, even though the words used may indicate a condition."

The adjudicated cases are very numerous in support of the rules of construction above quoted. We will review briefly some of these cases.

A very similar case to the one at bar arose in Vermont, and is reported in 55 Vt. 518. Taft, J., in speaking for the court, said: "The right of the plaintiff to maintain this action depends upon whether he took under his father's will the legal estate in the premises sued for. His father devised the premises to the plaintiff for life, with remainder

to the plaintiff's children, upon the express condition that the plaintiff paid to his brother Michael $700 on or before the 1st day of April after the testator's death. That sum has never been paid; and the defendant insists that the legal title to the premises has never vested in the plaintiff. There are cases in our sister states which hold that such conditions are conditions precedent, and that no title to the lands devised vests until the conditions are performed. Such may be the rule in the construction of deeds and contracts; but great latitude has been exercised by the courts in the construction of wills. 'It has been held that that which may be a condition precedent in a deed may be a condition subsequent in a will.' Jennings v. Gower, Cro. Eliz. pt. 1, p. 219. And the rules of construction are so liberal that it has been held that 'no precise form of words is necessary to create conditions in wills; but whenever it clearly appears that it was the testator's intent to make a condition, that intent shall be carried into effect.' 2 Williams, Exrs. 1081. The case at bar should not turn upon any technical construction to be given the words used. The great object is to come at the intention of the testator. Nice grammatical constructions, which lead aside from this grand object, are to be disregarded. The testator provided some of his children with homes,—those, it is said, who were living in this state,—distributing his real property among them. He gave Michael, living out of the state, $1,000 requiring the plaintiff to pay $700 of it, and giving the plaintiff his home farm on condition that he should pay it on or before the 1st day of April after the testator's decease. It was the evident intent of the testator that upon his death the plaintiff should be vested at once with the title and ownership of the farm, that the payment of the $700 should be charged upon it, and that it should be held subject to such equitable lien. This is the construction that we think should be given to the will. It could not have been the testator's intent that in case he had died on the last day of March that the devisee should lose all benefit of the gift in case he did not pay the $700 the next day. The plaintiff therefore had a sufficient title to maintain ejectment."

The supreme court of Michigan in McCarty v. Fish, 87 Mich. 48, 49 N. W. 513, in speaking to the point, said: "The fact that the testator makes no provision in regard to the disposition of the estate, providing the event named for a devisee or a legatee coming into full pos-

session never occurs, is regarded as satisfactorily showing that it was not in the mind of the testator to create a contingent estate.

"In Eldridge v. Eldridge, 9 Cush. 516, Shaw, Ch. J., defines the rule of construction upon this subject thus: 'When, therefore, words are equivocal, leaving it in some doubt whether words of contingency or condition apply to the gift itself or to the time of payment, courts are inclined to construe them rather as applying to the time of payment, and to hold the gift rather as vested than contingent.'

"In Dingley v. Dingley, 5 Mass. 537, Parsons, Ch. J., states the rule as follows: "For it is a rule of law that a remainder is not to be considered as contingent when it may be construed, consistently with the testator's intention, to be vested.'

"In Smith's Appeal, 23 Pa. 9, it was said: 'The law favors an absolute, rather than a defeasible, estate; a vested, rather than a contingent, one; a primary, rather than a secondary, intent.'

"In Letchworth's Appeal, 30 Pa. 175, it was held that the law always inclines to hold the whole interest in property as vested, rather than contingent; and therefore, in case of doubt, it declares the interest vested."

The following language from the supreme court of West Virginia is strikingly applicable to the case at bar: "He made no provision for their payment out of personalty, if there was any besides that given his wife, and it seems he owned no land besides that given his sons; and as he surely expected all these legacies, amounting to $12,300, besides the annual legacy of $500 to his wife, to be paid, we may ask, how could he expect them to be paid, except out of the land?" Hogg v. Browning, 47 W. Va. 22, 34 S. E. 754.

The Iowa court in the very recent case of Schrader v. Schrader, — Iowa, —, 139 N. W. 160, speaking through Mr. Justice Weaver, announces a like rule as follows: "That the testator regarded it as a lien or charge, and not a condition precedent, is made evident by the fact that he did not attempt to devise the fee to anyone else, in case of George's failure to make the payment. . . . The fact that the will does not provide for a devise over to another on failure of the first-named devisee to perform the condition attached to the gift is by all authorities considered a circumstance of much weight, indicating that the condition is not precedent to the vesting of an estate." Citing

Cunningham v. Parker, 146 N. Y. 29, 48 Am. St. Rep. 765, 40 N. E. 635; Hoss v. Hoss, 140 Ind. 551, 39 N. E. 255; Hanna's Appeal, 31 Pa. 53; Pearcy v. Greenwell, 80 Ky. 616; Re Vandevort, 62 Hun, 612, 17 N. Y. Supp. 316.

The provisions of the will in the Iowa case were not materially different from those in the will before us.

A very similar will was before the Wisconsin court in the recent case, Korn's Will, 128 Wis. 428, 107 N. W. 659. The will in that case gave the testator's widow the use and income of all his real estate during her life, and "after the death of my said wife I dispose of my property as follows, to wit: "Third. I will, devise, and bequeath to my son William Korn my farm [description] upon the express condition, however, that he shall pay to my daughter, Phillipina Steele, the sum of five thousand ($5,000) dollars within one year after the death of my said wife." Mr. Justice Dodge in speaking for the court said: "This naturally brings us to a consideration of the intent with reference to this legacy. The will does not, in terms, provide that the same should be a charge, but uses the expression that the devise to *William* is upon the condition that he shall, within one year after the widow's death, pay this amount to Phillipina. The expression 'upon condition,' if not otherwise qualified, might be construed as a condition precedent so that William could not take the land at all without making such payment, but since he was to take in possession immediately upon his mother's death, and was not required to make the payment until afterwards, namely, within a year, of course no condition precedent was intended. If, then, it is a condition at all, it is a condition subsequent; but there is no suggestion that his title is to be devested upon breach of that condition, and no provision is made for anyone else to take the land upon such breach. Hence, it seems necessary to deduce some other practical meaning and purpose from this language. We are persuaded that the trial court reached substantially the right conclusion on this subject. We think it plain that this $5,000 provision for the daughter —all that she receives under the will—was a very dominant purpose in the mind of the testator, and that his wishes, as evidenced by the will, would not be satisfied unless she receives it; hence, that he intended to declare his will that out of this farm, constituting nearly half of his estate, should be paid, in any event, $5,000 to the daughter Phillipina;

that this purpose should not be defeated either through William's inability to raise that amount of money upon his limited estate therein, or otherwise. To reach this result he must have intended to confer upon her the right to a lien or charge for this amount upon the whole title in these premises, and we agree with the trial court in holding that the will does so. Such lien or charge being created, of course the right exists in her to invoke the powers of a court, whether of law or equity, to exert its proper machinery to render that lien effective in producing the money she is entitled to have. Courts of equity have many such methods within their power, prominent among which is the judicial sale, whereby any title or any portion found necessary may be transferred to a purchaser who will pay the amount of money requisite to satisfy the charge. We think it proper to declare, also, that, she being *sui juris,* her right to this legacy, with all its accompanying security, can be sold or transferred by her like any other property, so that anyone, other than William, paying to her the $5,000 to which she is entitled may, with her co-operation, acquire all her rights in the land. We presume that the trial court intended to declare, by its judgment, a charge of this character, and no modification or change of the judgment, so construed, is necessary."

We are in entire accord with the reasoning and conclusion of the Wisconsin court in the above case, and adopt such reasoning in the case at bar.

See also McNally v. McNally, 23 R. I. 180, 49 Atl. 699, which is directly in point in support of our holding. The language in the opinion is so pertinent to the case at bar that we cannot refrain from quoting therefrom: "The will of Mary McNally gave to her daughter Catherine Bell 'the upper tenement in house on lot No. 1, including lot, *conditioned upon said Catherine paying to my daughter Annie Whalan the sum of 400.'* Also to 'Frank McNally the lower tenement in above said house, forever, *conditioned upon said Frank paying to my son James E. and daughter Eliza the sum of* ($300.00 Cash) *three hundred dollars.'* The two tenements in house on lot No. 2 were devised in similar terms, the lower to James E. and Eliza, including lot, and the upper to Bridget McNally. Then followed these two clauses: *'The above sums to be paid within three years from the time of my decease.* Also said James E. and Eliza are required to provide suitable provisions for

the sustenance of my son Philip during his life.' . . . The first question raised is whether the payment of the sums stated is a condition precedent or condition subsequent, or a charge upon the real estate devised. It is plain that the will does not create a condition precedent, because the devises are to take effect upon the death of the testatrix, while the payment is postponed for three years; nor a condition subsequent, because there is nothing in the will to show an intention of the testatrix to subject the estate to forfeiture. The payments were not for the benefit of her estate or of her heirs, generally, to whom a forfeiture would enure, but a mode of equalizing her gifts by requiring children to whom real estate was devised to make payments of money to other children who received no other gift from her. As there is no residuary clause in the will, it is evident that her property consisted only of this real estate, which could not be divided into as many parts as there were children; hence the equalization in payments of money. The use of the word 'conditioned' does not necessarily imply a strict condition, either precedent or subsequent. The intention must control. 2 Washb. Real Prop. 5th ed. 446, ¶ 3, and cases cited in note 5. We think that the intent in this case was to make the payments a charge upon the estate devised."

See also Spangler v. Newman, 239 Ill. 616, 88 N. E. 202; Perry v. Hale, 44 N. H. 363. In the latter case the facts were that the testator devised a life estate in his farm to his wife and then to his son "on condition that he pay testator's daughter Susan $700, and his daughter Mary Ann $800," and it was held that the bequests were a mere charge upon the farm.

We might cite many more authorities holding to the same effect, but we deem it unnecessary. We are entirely clear that by the will in question the testator did not intend that the devises to his sons should be upon any condition, either precedent or subsequent, but, rather, his intent was to vest in them at the date of their mother's death an unconditional estate, impressed, however, with a charge or trust in favor of the legatees aforesaid for the payment of such legacies. Not only the weight of authority, but we believe all authorities, support this conclusion.

In his supplemental brief respondent's counsel asserts that the foregoing authorities are not in point because of a distinction in the statutes

relating to perpetuities, but we are wholly at a loss to understand how these authorities can be differentiated from the case at bar on such ground. Surely, if the provisions of the will create a mere charge instead of a conditional devise, the statute against perpetuities and limiting the suspension of the power of alienation has no relevancy. The rule of construction which requires the testator's intention to be given effect is universally recognized, and no different rule is in force in common-law states than is in force in code states like North Dakota. Respondent's counsel seems to predicate his whole argument upon the assumption that the devises in question were upon a condition precedent, and, as we have seen, such assumption is unwarranted and without support in the authorities.

The judgment of the District Court is accordingly reversed and the cause remanded for further proceedings.