DIAGONAL STATE BANK, Appellant, v. DAVID NICHOLS et al.,
Appellees.

No. 42799.

FEBRUARY 5, 1935.

Beard & Beard, for appellant.

Lewis & Lewis and Grant L. Hayes, for appellees.

PARSONS, J.—It appears from the petition in this case that John Nichols, a resident of Ringgold county, Iowa, died May 29, 1903, leaving a will which was filed for probate on the 23d day of

June, 1903, and was admitted to probate October 1, 1903. Mary E. Nichols, the surviving wife of John Nichols, was named as executrix of the will and qualified and served as such until the approval of her final report on August 29, 1905.

 The will devised to the wife, Mary E. Nichols, all of the property of the deceased, both real and personal, to hold so long as she remained the widow. The provision was made that in case she should marry again then the property should be divided between Mary E. Nichols, who was to receive one-third, and the residue and remainder of the estate to be divided among his children: Viola C., James E., Emma G., Charles E., Alva F., Martha P., John N., Richard R., Maude V., and David R. Nichols, "except that Viola C., James E., Emma G., and Charles E. shall pay to my estate $300.00 each, the sum already having been paid to them" by the testator. That at the death of Mary E. Nichols the remainder of the estate was to be divided among the aforesaid children, except the four of the above named were to pay $300 each before receiving their pro rata share, without interest. This was followed by the provision that all just debts and funeral expenses of the said Mary E. Nichols were to be paid out of his estate.

It appears that Mary E. Nichols never remarried, but remained the widow of the testator of the will until she died on the 29th day of April, 1933, and that up to the time of her death she enjoyed a life estate in and used the rents and income from the real estate involved, in accordance with the terms and provisions of the will of John Nichols. The real estate involved in this action was a 160 acres of land and a couple of lots in an addition to the town of Diagonal, Iowa, and two lots in the original plat of said town. This property was all owned by John Nichols in his lifetime, and remained intact the property of the estate until the death of his wife.

On July 20, 1932, David Nichols and Mary E. Nichols gave a promissory note for $233.90 to the Diagonal State Bank, set out in the petition as Exhibit "A", and on the same date gave to said bank a promissory note in the sum of $2,630, interest on each note at 8 per cent. David Nichols was one of the beneficiaries named in the will of the testator, John Nichols, and as such came into a share upon the death of Mary E. Nichols.

An amendment to the petition was filed making defendants all those who by the will were entitled to a share in the estate after the death of Mary E. Nichols. The plaintiff prayed in its petition

that the amount due on the notes against David Nichols and the estate of Mary E. Nichols be decreed to be a lien upon the real estate involved, and that the court decree that the administrator of the estate of Mary E. Nichols shall pay the claim from any funds coming into his hands as such administrator, and after such funds are applied to the plaintiff's claim that special execution issue directing that any or all of the real estate described in the petition be sold for the purpose of paying the claim against the estate of Mary E. Nichols, and the costs of the action, etc., and for general equitable relief. The defendants filed a motion to strike the different causes of action in this joining of parties, and also filed a motion to strike the claimed different causes of action and transfer, the first motion being filed October 15, 1933, and the second May 9, 1934, and on the 11th day of May, 1934, filed a motion to dismiss the cause of action. On the second day of May, 1934, the court sustained the motion of the defendant to separate and transfer, and filed an opinion in the case, which is set forth in the record, and on the 2d day of June, 1934, sustained the motion to dismiss. It appears there was another order filed on the 22d day of May, dismissing the action. Appeal was taken by the plaintiffs to this court.

The petition in the case seeks to establish that Mary E. Nichols at her death owed a just debt to the plaintiff bank, which debt was evidenced by the two notes set forth in the plaintiff's petition. It really asked the court to find the amount of that debt and to establish it as a lien against the interests of the defendants in the real estate devised by the will of John Nichols. This is attacked by the defendants as being a misjoinder of the causes of action, and on the ground also that it should be established first against the estate of Mary E. Nichols. The trouble with this is that the will in question contained at the end of the third clause the following phrase: "All just debts and funeral expenses of the said Mary E. Nichols to be paid out of the estate." What estate did the testator have in mind? Clearly, without any question, the estate that he was leaving, and with which his will dealt.

It might be doubtful whether or not, if Mary E. Nichols had accumulated an estate since the death of her husband, to the time she died, and administration had been taken upon her estate, if that administrator saw fit, he could not have interpleaded the same defendants in an action on the theory that the will containing the provision quoted above made it the primary duty of the holders of

the land to pay such debt, and a great deal could be said upon this construction. Mrs. Nichols, the widow, was entitled from the estate of her husband to one-third of the estate. She was given only a life interest in it. It was also provided that if she should marry again then she should have only one-third, but she accepted the will. She may have accepted and may have been content with the provisions made therein, and who can say that the phrase "All just debts and funeral expenses of the said Mary E. Nichols shall be paid out of my estate" would not have been one of the determinative things of such acceptance and election to take under the will? However, we are not deciding the proposition suggested. It is not necessary in determining this case so to do.

Reduced then to its final analysis, the petition was simply an attempt to establish as a fact that at her decease Mary E. Nichols owed the bank the debt evidenced by the two notes sued on, and that the phrase quoted from the third paragraph of the will of her husband gave the bank its right, it being a creditor and holding a just debt against Mary E. Nichols, and gave it the right to resort to the real estate left to the defendants, and make it a charge upon that real estate.

The estate of John Nichols had been fully closed. Nothing remained but the real estate. The defendants knew the case, but took the real estate under the terms of the will, and under the terms of the will the question arises whether or not the ownership of the real estate was not subject to the provisions quoted above. If so, the case is one simple of solution.

The question is raised that the plaintiff filed its claim with the administrator of the Mary E. Nichols estate. This was not inconsistent with the filing of the petition. It was simply an attempt to fasten the part of the security the bank had other than the charge made upon the estate of John Nichols. Under our probate law the claim was filed in the Mary E. Nichols probate proceedings to establish it as a claim that might be paid out of the assets of that estate. And undoubtedly the bank had the right as all creditors have to resort to all the security it has.

In construing a will, in other words, finding out what it means, we look at the whole will, see what the testator has in mind; try to follow it. In this case the plaintiff is proceeding upon the theory that the testator had in mind the charging of his estate, or any property he had, with the payment of any just debt which existed

against the testator's wife, Mary E. Nichols, at the time of her death. As was before pointed out, it could have been filed against her estate, and perhaps allowed, but that would be no bar to the suit brought by the bank in this case.

██ The defendants, or their predecessors in title, upon the probate of the will of John Nichols, were given a vested interest in the estate subject of course to the conditions of the will, and one of the conditions of the will was the allowance against the property of the estate of the "just debts and funeral expenses" of Mary E. Nichols, the widow. The will does not say just debts and funeral expenses established against the estate of the widow, but included all just debts, and we see no reason why the fact that a just debt existed could not be established in a suit between the holder of that debt and some one else having property liable for its payment, other than by filing a claim against the administrator of the widow's estate. It might be that the adjudication and determination in the probate court against the administrator of the widow's estate would not be conclusive evidence in a suit of the nature of this one, as against the defendants.

However, the will of John Nichols created a life estate in Mary E. Nichols with a vested remainder in his children, charged with the payment of the funeral expenses and just debts of Mary E. Nichols, and next as to each child, except as to Viola C., James E., Emma G., and Charles E. Nichols; the share of each being charged with the payment to the estate of $300 each to make the other heirs equal them. These we understand were all the children of John Nichols and his wife, and the effect of this clause in the will, being the third clause, is to give to each of the children a vested interest in the property after the death of the mother. The condition of paying the $300 each by the named four heirs was a condition subsequent, nothing was made precedent to vesting the interest of any of the children, so that in so far as the claim here is concerned, it stood upon the same basis as the other claims. If it was a just debt, or funeral expense, against Mary E. Nichols, it was to be paid out of the testator's estate. Our court has something to say about vested interests.

In Archer v. Jacobs, 125 Iowa 467, 101 N.W. 195, the court says:

"It is also the well-settled doctrine that courts always hold a remainder to be vested if the same can be done without manifest

violation of the intention of the donor." Again it says: "The uncertainty whether the remainderman will outlive the life tenancy and come into the actual possession does not make the remainder contingent, for that is a contingency which attaches to all remainders of every kind, or, as the rule is generally stated, it is not the certainty of possession and enjoyment which distinguishes a vested remainder, but it is the certainty of the right to the future enjoyment if the remainderman lives until the life tenancy terminates."

Again, in Schrader v. Schrader, 158 Iowa 85, 139 N. W. 160, Henry and Frank Schrader brought suit against Louisa and Dora Schrader asking for the construction of a will. In the will the testator first gave his personal estate and a life interest in all his real estate to his wife. He undertook to devise the remainder in certain described real estate to his sons George, Henry, and Frank. In one clause he provided that the certain described tract of land should on the death of his wife, Dora, be equally divided between his sons George, Henry, and Frank. Then added:

"It is further my will that in the event that the said Dora Schrader shall die before I do that upon my death the last described premises shall be equally divided between my three sons."

Then followed the provision that if his wife Dora should live after him, then on the death of the said Dora Schrader, George Schrader should become the sole, absolute, and unqualified owner of certain described real estate, and said it was the "express condition that before George Schrader shall become the sole, absolute and unqualified owner of said real premises that he shall pay to my well beloved son, Henry Schrader, the sum of $500," and then followed that if his wife died before he did that upon his death this particular real estate should pass to the sole and absolute, unqualified ownership of George Schrader upon the condition he pay to Henry Schrader $500. The testator died in 1904 and George Schrader died in 1906, leaving surviving him his wife Louisa, and his infant daughter, Dora Schrader. George did not in his lifetime pay the sum of $500 to his brother Henry; nor had it been paid by the widow or child of George when the action was commenced. In July, 1909, Dora Schrader, the widow of the testator, died, and this question at once arose as to what interest therein, if any, accrued to the widow and child of George. Henry and Frank

contended that George took no vested interest in any of said lands upon the death of their father, but that the devise to him was contingent upon his surviving their mother, the life tenant, and, having died before such devise became effective, and before acquiring any heritable estate in the property, no interest of any kind passed to his wife or child. Plaintiff appealed from this portion of the decree. This portion of the appeal was dismissed. In the second division of the opinion another question is reversed saying,—Was it the intention as expressed in the will to make the payment of $500 by George to his brother Henry a condition precedent to the acquirement by George of any right to or interest in said land, or was it his purpose to make the gift to Henry a charge upon said property in the hands of George, and thus safely secure its payment? The opinion says:

"The trial court, it seems, held to the former theory of construction, but after considerable investigation we are led to adopt the latter. In the first place, as between contingent and vested estates, conditions precedent and conditions subsequent, forfeitable rights and nonforfeitable rights, the courts always incline to the latter whenever it can fairly be done without violence to the language of the instrument under which the claims of the parties are asserted."

It was held by this court that the payment of $500 was not a condition precedent, but that the legacies were a charge upon the land involved, and it says further on in the opinion:

"The testator's purpose, as indicated by the will, was to give his wife a life estate, subject to which he undertook to divide one piece of land between his three sons and to give the other tract to George, charged with a payment to be made to Henry. This will be effectively accomplished by permitting the defendants, as the widow and heir of George, to take the land, subject to the burden which the will imposes upon it. Such a holding works no wrong to any one—a proposition which can hardly be affirmed of any other result."

To the same effect is In re Estate of Phearman, 211 Iowa 1137, 232 N. W. 826, 82 A. L. R. 674.

There is a discussion in other cases of the difference between contingent and vested remainders. In re Gray's Estate, a North

Dakota case, 27 N. D. 417, 146 N. W. 722, L. R. A. 1917A, 611, is a discussion of these questions as to vested and contingent remainders, and also an extended note beginning at page 617 of the L. R. A., the fourth subdivision on page 629, cites the cases generally involving the question whether a condition subsequent was created. These citations of cases are too lengthy to set out, but follow the rule as we have indicated. In the fifth subdivision the question is discussed as to whether or not a charge was created, and an examination of this will show in all such cases as the case at bar it was held that it was a condition subsequent, and that it was a charge upon the property the testator left. So under these authorities, it is our view that by his will the testator made his estate liable for the payment of the just debts and funeral expenses of his widow; that the plaintiff herein claims to be the holder of such a just debt, that he may maintain an action in equity for the establishment of such debt as against the interest of the defendants herein, who are holding the property of John Nichols under the will, and that it may by competent proof show the creation and existence of the debt, and that it is entitled to have that debt made a charge upon the real estate of the testator remaining.

For the reasons hereinbefore stated, the cause is reversed and remanded.

ANDERSON, C. J., and ALBERT, DONEGAN, and RICHARDS, JJ., concur.