IN RE ESTATE OF JOSEPH PHEARMAN.

No. 40546.

NOVEMBER 11, 1930.

REHEARING DENIED FEBRUARY 18, 1931.

*O. M. Brockett* and *A. E. Mahan* for appellants.

*A. H. Brouse* and *Henry Silwold,* for appellees.

WAGNER, J.—Joseph Phearman, the testator, died February 4, 1917. His will was duly admitted to probate on the 27th day of the same month. The nomination of Charles H. Phearman,  a son, as executor, was confirmed by the court, and he is still acting as such. Charles H. Phearman, both as executor and in his own right as a devisee and legatee, instituted this action for the construction of the will. Said instrument provides:

"(First) I give, devise and bequeath unto my beloved wife Sarah Phearman, the use and benefit of all my property, both real and personal, of which I may die seized including monies and credits, so long as she remains my widow.

"(Second) In case my beloved wife Sarah Phearman shall ever marry another man, then and in that case she to have one third of all my property as hereinafter stated.

"(Third) I give, devise and bequeath unto my son Charles H. Phearman, at the death of my said wife the farm now owned by me, to wit: The northwest quarter of the northeast quarter, and the northeast quarter of the northwest quarter all of Section twelve, Township seventy-eight north, Range twenty-one west of the fifth Principal Meridian, Jasper County, Iowa, upon the following conditions, to wit—That within one year after the death of my said wife he shall pay unto my two daughters, Emma M. Reither, and Ella L. Phearman the sum of two thousand dollars each.

"(Fourth) At the death of my said wife I give, devise and bequeath unto my two daughters, Emma M. Reither, and Ella L. Phearman, and my son Charles H. Phearman the balance of my estate both real and personal to be divided share and share alike.

"(Fifth) In case my said wife shall marry another man then and in that case my son Charles H. Phearman to have the farm above described and to pay my said wife one third the value thereof, said value to be ascertained by an appraisement thereof by

three disinterested persons to be appointed by the court, and my son Charles H. Phearman to pay my two daughters Emma M. Reither, and Ella L. Phearman two thousand dollars each, in lieu of the two thousand dollars above mentioned, and all other property both real and personal to be divided between my wife and my two daughters, share and share alike.''

On November 14, 1918, Sarah Phearman filed her written election to take under the will, which has been made of record. She died January 4, 1930, not having remarried. Ella L. Phearman, one of the daughters named in the will, died March 11, 1928, unmarried, intestate, and without issue. It will be observed that said daughter died approximately one year and ten months before the date of the death of her mother. On June 18, 1929, Sarah Phearman, the widow, by a written instrument, assigned and conveyed unto her daughter Emma M. Reither all her right, if any, in the property in controversy which was acquired by the daughter Ella L. Phearman under the will of the deceased, and which she (the mother) claimed to have inherited from said daughter. The testator owned, at the time of his death, the 80 acres described in the third paragraph of the will, and also Lots 7 and 8 in Block 1 of Eaton & Norton's Addition to the Town of Prairie City. The executor desires to close the estate, and has on hand approximately $600 of money belonging to said estate, not computing the $4,000 referred to in the third paragraph of the will. The son and executor prays that the provisions for the deceased daughter, Ella L. Phearman, in the third and fourth paragraphs of the will, be so construed as to hold that her property rights therein mentioned have lapsed, by reason of her death prior to that of her mother. The administrator of the deceased daughter, Ella L. Phearman, intervened herein, contending that the right to the $2,000 mentioned in the third paragraph of the will vested at the time of the testator's death, and that also her rights in the property in the residuary clause (the fourth paragraph of the will) vested at said time, and asking that the moneys referred to in said paragraphs of the will be paid to him, as her administrator. The living daughter, Emma M. Reither, filed an answer and petition of intervention, contending the same as said administrator, and that, by reason of the aforesaid assignment and conveyance unto her by her mother, she is entitled to the property devised and bequeathed unto her sister, subject only to the rights of said

administrator to the same in the course of the administration of her estate.

The contention of the respective parties must necessarily be determined by a construction of the will. The facts are not in dispute. It is conceded that, since the death of the mother, the son has been, and now is, in possession of the 80 acres mentioned in the third paragraph of the will, as devisee thereof. Since the widow did not remarry, the plan of disposition of his estate as set out in Paragraph 5 of the will has been nullified, and the rights of the parties are fixed by the prior paragraphs of said instrument. Since there was no remarriage of the widow, it is clear that, under the terms and provisions of the will, she had only a life estate in the property of the deceased. We will first determine what are the rights of the respective parties relative to the $2,000 in dispute, referred to in the third paragraph of the will. The trial court held that the son is the owner of said 80 acres, subject only to the payment of $2,000 on or before January 4, 1930, to his sister, Emma M. Reither. In other words, the trial court held that the son was not required to pay the $2,000 to those claiming through his deceased sister, Ella L. Phearman, and that said legacy or charge had lapsed by reason of her death before her mother.

The decisive question relative to this matter is: When did the right of Ella L. Phearman to the $2,000 vest? At the death of the testator or at or after the death of the widow? If it be the latter, then the decree of the trial court in this respect is right; and if it be the former, then it is wrong, for there can be no lapse of a legacy which has vested. 40 Cyc. 1925; *Dorsey v. Dodson,* 203 Ill. 32 (67 N. E. 395).

There can be no doubt that the condition that the son pay his sister Ella L. Phearman the sum of $2,000 is in the nature of a legacy, which is to be treated as a charge upon the 80 acres of land devised. See *Schrader v. Schrader,* 158 Iowa 85; 1 Page on Wills, Section 752; *Casey v. Casey,* 55 Vt. 518; *McCarty v. Fish,* 87 Mich. 48 (49 N. W. 513); *Eldridge v. Eldridge,* 9 Cush. (Mass.) 516; *Smith's Appeal,* 23 Pa. St. 9; *Dingley v. Dingley,* 5 Mass. 535, 537; *Korn v. Friz,* 128 Wis. 428 (107 N. W. 659); *McNally v. McNally,* 23 R. I. 180 (49 Atl. 699); 40 Cyc. 1683; *In re Estate of Gray,* 27 N. D. 417 (146 N. W. 722, L. R. A.

1917A 611). See numerous cases cited in L. R. A. 1917A 634 *et seq.* In *Schrader v. Schrader,* 158 Iowa 85, we said:

"A devise to the effect that the testator's sons should have certain real estate by paying a stipulated amount to their sisters was held not to create a condition, but a charge on the land. *Taft v. Morse,* 4 Metc. (45 Mass.) 523. A devise to A, on condition that he pays a legacy to B, charges the legacy on the land. 2 Jarman on Wills (6th Ed.) 2000. A devise to A 'on condition that he pay my grandson B. $300' is not a conditional devise, but gives to B a legacy of $300, charged upon the land. *Woods v. Woods,* 44 N. C. 290. A devise to A 'upon the express condition' that he pay B $700 before the 1st day of April after the testator's death is not a condition precedent, and B obtains thereby only an equitable lien on the land. *Casey v. Casey,* 55 Vt. 518."

The question is: When did the right to the $2,000 vest in Ella L. Phearman? In *McClain v. Capper,* 98 Iowa 145, we said:

"In 2 Williams Ex'rs. 514 it is said, under the subject of 'Legacies Lapsed by the Death of the Legatee after the Death of the testator:' 'If a legacy be given generally, without specifying the time when it is to be paid, it is due on the day of the death of the testator. * * * But, when a future time for the payment of a legacy is defined by the will, the legacy will be vested or contingent according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy or to the gift of it. In ascertaining the intention of the testator in this respect, the courts of equity have established two positive rules of construction: (1) That a bequest to a person, *payable* or *to be paid* at or when he shall attain twenty-one years of age, or at the end of any other certain, determined term, confers on him a vested interest immediately on the testator's death. * * * (2) That, if the words "payable," or "to be paid," are omitted, and the legacies are given *at* twenty-one, * * * or any other future, definite period, these expressions annex the time to the substance of the legacy, and make the legatee's right to depend on his being alive at the time fixed for the payment. Consequently, if the legatee happens to die before that period arrives, his personal representatives will not be entitled to the legacy.' *. * *.* 'There is a material distinction, as regards vesting, between legacies payable at a future time out of real estate, and legacies

payable at a future time out of personalty. As regards the latter, the time does not, in general, affect the vesting; *but, as regards the former, the rule is that legacies charged on land do not vest before the time appointed, unless an intention appears to the contrary* [writer's italics].' In *McCartney v. Osburn,* 118 Ill. 403 (9 N. E. Rep. 210), the above rules are followed, and the case quotes and applies the following from Jarman on Wills: '*When the only gift is in the direction to pay or distribute at a future age, the case is not to be ranked with those in which the payment or distribution only is deferred, but it is one in which time is of the essence of the gift* [writers italics].' We have seen no case contravening these rules, and we may now look to their application to the case at bar. We first apply the rule quoted from Jarman on Wills, as to where the gift is in the direction to distribute or pay only. That is precisely the character of the devise of the land in question. As to his personal estate, he at all times says, '*I will and declare,*' or '*I will and bequeath,*' using express words of gift or grant, as: '*I will and bequeath to my beloved wife. * * * I will and bequeath to my daughter Mary Elizabeth* [writer's italics].' As to the real estate in question, he says: 'When my youngest child arrives at full age, I desire that my real estate * * * be equally divided between my children [naming them], their heirs, or survivors of them.' A rule of construction could not be more applicable. There are no words of gift or grant, except the direction for a division [payment], which, of course, means that, when the time arrives, the interest shall vest in the proportions indicated.''

The principle announced in the latter part of the foregoing quotation has been applied and followed in *Olsen v. Youngerman,* 136 Iowa 404; *Fulton v. Fulton,* 179 Iowa 948; and others of our subsequent cases. In *Olsen v. Youngerman,* 136 Iowa 404, at 409, we said:

''Where the only words of gift are found in the direction * * * to * * * pay at a future time, the gift is future, not immediate, contingent, nor [not] vested * * *.''

It will be observed that, in the will which we have before us, the testator does not will or bequeath the $2,000 to his daughter, but merely affixes to the devise of the 80 acres to his son the direction or condition that he pay her $2,000. When was he to pay

it? After the death of testator's wife, and "within one year" thereafter. Since there are no words of bequest, gift, or grant of the $2,000 to the daughter by the testator, except a direction or condition that the son shall pay, "which, of course, means that, when the time arrives" for the payment, "the interest" or right "shall vest" (see *McClain v. Capper*, supra), then, in the language of the cases, the charge upon the land, which is in the nature of a legacy, is "future, not immediate, contingent, nor [not] vested * * *." See *Olsen v. Youngerman*, supra. There is nothing in the will indicative of a contrary intent by the testator. In *McCartney v. Osburn*, 118 Ill. 403 (9 N. E. 210), the court said:

"The rule is well settled that a gift of personal estate at a specified future time * * * will not vest till the time specified has arrived * * *. But if the gift is general, and there is merely a simple direction that it be paid, * * * it will vest at the testator's death, and the payment * * * only will be postponed. * * * This distinction, however, by the current of authority, has no application to a devise of real estate."

The writer then distinguishes between the devise of real estate and bequests of personal property, and then adds:

"As to real property, the courts went in the opposite direction, rather, even so far as to hold that a legacy charged upon real estate, and payable at a future day, sinks, as to the real estate, by the death of the legatee before the time of payment * * *."

See also *Macknet's Exrs. v. Macknet*, 24 N. J. Eq. 277. In 40 Cyc. 1956, the author states:

"Where a legacy which is charged on a devise lapses, the legacy sinks into the devise, and the devisee takes the land free from any charge thereon; for the gift to him was, in the first instance, of the whole, the gift being afterward modified or charged, and, the modification failing, the gift remains complete, as at first."

It was not compulsory that the son accept the devise of the land under the conditions mentioned. Suppose the will had provided that he should have the 80 acres on condition that, within one year after the mother's death, he should pay to his two sisters

$100,000 each (many times the worth of the land),—could it be said that the sisters had a vested interest in the charge upon the land in the nature of a legacy, until he had accepted the devise and elected to pay? Certainly not. The daughters' rights were *contingent* upon the son's accepting the devise with the conditions attached. Under this clause, the son had until the death of the mother and one year thereafter, to accept the devise and elect to pay.

In view of the foregoing authorities and the provisions of the will which we have before us, we can arrive at no other conclusion than that the right of the daughter to the $2,000 did not vest until the time fixed for the payment arrived; that the charge upon the real estate, in the nature of a legacy, lapsed by her death prior to the time fixed by the will for the vesting thereof; and that the trial court was right in decreeing that the son is the owner of the 80 acres, subject only to the payment by him of $2,000 to the living sister, Emma M. Reither.

Now, what as to the residuary estate disposed of by the fourth paragraph of the will? The trial court also held that Ella L. Phearman took no interest thereunder. Did the residuary devisees and legatees have a vested or a contingent remainder in the residuary estate? It is well settled that, unless the intent of the testator is made to appear to the contrary, a devise or bequest will be construed in favor of a vested remainder, instead of a contingent remainder. A vested remainder is one whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined,—one where the estate is invariably fixed, to remain to certain determinate persons. See *Fulton v. Fulton,* 179 Iowa 948, 957.

"The prior particular estate and the remainder are one estate in law, a unit of estate; and they must both subsist and be *in esse* at one and the same time, either during the continuance of the prior particular estate or at the very instant of its termination." *Williamson v. Youngs,* 200 Iowa 672, 676.

In the instant case, the prior particular estate is the life estate of the widow, which began at the death of the testator. Ella L. Phearman, the daughter, at the time of the death of the

testator, was *in esse*, ready to take, and having the capacity to take, her share of the property upon the termination of the life estate of her mother. It is true that the residuary clause states: "At the death of my said wife, I give, devise and bequeath," etc.; but we have always held that such expressions as "at the death," "from and after the death," or "on or upon the death," of the life tenant are ordinarily to be construed as postponing only the time of enjoyment, rather than the time of the vesting of the fee. *Moore v. Dick*, 208 Iowa 693; *Lingo v. Smith*, 174 Iowa 461; *Scofield v. Hadden*, 206 Iowa 597. The use of said words in said clause in the will are not sufficient to indicate an intent or purpose to postpone the vesting of the estate. *Moore v. Dick*, 208 Iowa 693.

It is quite apparent that Ella L. Phearman, the daughter, took her pro-rata share of one third, with her sister and brother, under the residuary clause of the will. Therefore, the trial court was wrong in holding that, at the time of her death, she had no interest in the estate of her father. As to the residuary estate, consisting of the Prairie City real estate and the approximately $600 remaining in the hands of the executor, she had a vested interest therein at the time of the death of the testator, which, upon her death, passed by inheritance to her mother, and, by the assignment and conveyance of her mother, as aforesaid, to her sister; and the sister is now entitled to the same, subject to the rights of the administrator of the Ella L. Phearman estate. To this extent, the decree of the trial court is hereby modified, but otherwise affirmed.—*Modified and affirmed*.

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.