FAYE LYTLE, individually and as administratrix, et al., appellees, v. CARRIE E. GUILLIAMS; IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY, trustee, et al., appellants; BLANCHE ROBERTS DOWLER et al., appellees.

No. 47582.

(Reported in 41 N.W. 2d 668)

.

MARCH 7, 1950.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, and Charles D. Van Werden, of Winterset, for appellants.

Daniel J. Gallery, of Winterset, for appellees.

Earl R. Shostrum, for Olive M. Kale, Loren E. Kale and Marvin D. Kale, defendant-appellees.

Charles D. Van Werden, of Winterset, for Blanche Roberts Dowler and Asa Dowler, defendant-appellees.

OLIVER, J.—Wesley Roberts died in 1910. His will was made a few days earlier. It gave to his son, Harry, his farming tools and equipment, to a daughter Myrtle Lytle six head of cattle then in the possession of Myrtle and her husband and their note for $100, and to the other daughter, Cora Slinker, $300 in cash. It provided also:

"5th. I give, devise and bequeath to my wife, Mary Roberts, the balance of my personal property, and all of my real property which consists of * * * [legal description of a house in St. Charles and the 120-acre-Iowa farm here involved] of which she is to have full control and to use her natural life time, and it is my wish that no real estate be sold so long as she may live."

"7th. I will that at the death of my wife that the real and personal property be divided among my children as follows: I will to Harry Roberts all the personal property of my estate that may be remaining at the death of my wife, and all the real property above mentioned; and that out of the property above mentioned is to be paid to Cora Slinker, Two Thousand Seven Hundred ($2700.00) Dollars, and to Myrtle Lytle, Two Thousand Seven Hundred ($2700.00) Dollars."

Cora Slinker died in 1920, Myrtle Lytle in 1929 and Harry Roberts in 1939. Testator's widow, Mary Roberts, died in 1947, aged ninety-seven years. Apparently no personal property belonging to the estate remained at her death. At the time of testator's death in 1910 Myrtle Lytle had three, and Cora Slinker two, children. The record does not show the value of testator's estate at that time. A witness estimated the farm was worth $14,400 in 1941. He testified the house was worth $1000.

In 1928, Mary Roberts and Harry Roberts gave a mortgage for $2000 on the one-hundred-twenty-acre farm. In 1939, the mortgage was foreclosed by C. C. Guilliams. None of the heirs, representatives or successors in interest of Cora Slinker or Myrtle Lytle were made parties to that action. Guilliams bid in the farm for $2500. Sheriff's deed issued to him in 1942. He died in 1945. Neither of the $2700 charges set up against the real estate by paragraph 7 of the will was ever paid. In 1948 this action was instituted to subject the real estate thereto. Plaintiffs and intervenors were the heirs, successors and legal representatives of Cora Slinker and Myrtle Lytle. Defendants were the successors in interest of C. C. Guilliams and Harry Roberts. The principal contentions of defendants were:

(1) That the interests of Cora Slinker and Myrtle Lytle were contingent and had lapsed on the death of each beneficiary before her legacy vested.

(2) That under section 614.17, Code of Iowa, 1946, this action was barred by the failure to file statements of such interests within one year after July 4, 1943.

The trial court found against defendants. The judgment established the charges against the real estate and ordered it sold to satisfy them. The successors in interest of C. C. Guilliams have appealed.

I. · The purpose of construing a will is to ascertain the testator's intent. This must be determined from the will itself and from nothing else, if its language is plain and unambiguous. In re Estate of Eason, 238 Iowa 98, 26 N.W.2d 103; In re Estate of Syverson, 239 Iowa 800, 804, 805, 32 N.W.2d 799; Westerfelt v. Smith, 202 Iowa 966, 211 N.W. 380. Where the language is clear, both in expression and meaning, rules of construction are

inapplicable. In re Estate of Thomas, 220 Iowa 50, 54, 261 N.W. 622.

This will evidences an intention on the part of testator to give the son and each daughter a definite share in his estate, the shares of the daughters to be equal. In the first part of the will is a gift to Myrtle of cattle and a note. It is a fair inference the $300 given to Cora was to equalize this gift. The corresponding gift to Harry was the farm equipment. The gift to Harry of the remainder of the property, subject to the life estate of the widow, corresponded to the gift to each daughter of a $2700 charge thereon.

The question here is whether these $2700 gifts vested at testator's death, with their enjoyment postponed during the life of testator's widow. If they were contingent, then, upon the death of either Myrtle or Cora, prior to their vesting, the benefit of her share of the remainder of testator's estate would pass to Harry or his heirs. In effect this would give Harry or his heirs or successors the entire share of either of his sisters who should predecease their mother, to the exclusion of the other sister or her heirs. More particularly it would result practically in the disinheritance by testator of the children of either or both Myrtle and Cora. Such result would not seem to accord with testator's plan of distribution as indicated by the will.

However, appellants contend the following language of the seventh paragraph makes the remainders contingent:

"I will that at the death of my wife * * * property be divided among my children as follows: I will to Harry * * * the property; and that out of [it] * * * is to be paid to" Cora $2700 and to Myrtle $2700. Appellants rely upon decisions of this court based upon a rule of construction known as the "divide and pay over" rule, which is, in substance, as follows: Where the only words of gift in a testamentary disposition of property are found in the direction to divide or pay at a time subsequent to the death of the testator, time is to be taken as of the essence of the gift, and it is future, not immediate, contingent, not vested. The rule has been said to be inapplicable when the postponement of payment is merely for the purpose of letting in an intermediate estate or for the convenience of handling the assets which are the subject matter of the limitation.

Restatement of the Law, Property, section 260; Olsen v. Young-erman, 136 Iowa 404, 409, 410, 113 N.W. 938; 57 Am. Jur., Wills, section 1231, page 811.

The "divide and pay over" rule has been severely criticized as tending to impair titles and produce litigation, as often defeating the testator's actual intention, as being artificial and unsatisfactory and as being subject to so many limitations as to tend to confusion. It has been rejected by some courts and is in growing disrepute. 57 Am. Jur., Wills, section 1231, page 812; annotation in 144 A. L. R. 1155 to 1172. Commentaries on the Law of Real Property (1947) by William F. Walsh, volume 3, section 316, page 244, states:

"Technicality without substance resulting in a rule of construction which defeats the testator's intent whenever it is applied, is the necessary character of the 'divide and pay over rule' which still persists in some quarters in spite of its quite general repudiation."

Restatement of the Law, Property, section 260, pages 1313, 1314, states the direction to divide and pay over, etc. "is not a material factor in determining the existence of a requirement of survival to the date of distribution." The comment is then appended, "a. Rationale. This Section denies the validity and significance of the so-called 'divide and pay over' rule." The comment states the two recognized exceptions to the rule "so completely cancel the rule as to leave nothing in either the rule or its exceptions helpful to the construer of a limitation."

Decisions of this court show much irregularity in the application of the "divide and pay over" rule. In some decisions which recognize or appear to be based in part upon it, other language of the instrument was sufficient to make the remainders contingent. Among such decisions are: Olsen v. Youngerman, 136 Iowa 404, 113 N.W. 938; McClain v. Capper, 98 Iowa 145, 67 N.W. 102; In re Will of Wolber, 194 Iowa 311, 189 N.W. 782; Fulton v. Fulton, 179 Iowa 948, 162 N.W. 253, L. R. A. 1918E 1080; Taylor v. Taylor, 118 Iowa 407, 92 N.W. 71.

Some decisions apply the rule despite its inapplicability due to the fact the postponement of the enjoyment is for the purpose of letting in an intermediate estate. Among these are:

In re Estate of Phearman, 211 Iowa 1137, 232 N.W. 826, 82 A. L. R. 674; In re Will of Wolber, 194 Iowa 311, 189 N.W. 782; Taylor v. Taylor, 118 Iowa 407, 92 N.W. 71; Fulton v. Fulton, 179 Iowa 948, 162 N.W. 253, L. R. A. 1918E 1080. An editorial note in 8 Iowa L. Bull. 111–115 (1923) criticizes the doctrine of these cases and states that where there is a direction to divide to named parties upon the death of the prior devisee for life, there is no uncertainty of the parties to take, no contingency is annexed to the gift different from any vested remainder, and only the enjoyment is deferred. Schrader v. Schrader, 158 Iowa 85, 88, 139 N.W. 160, without mentioning the rule, holds such remainders vested. Sleeper v. Killion, 182 Iowa 245, 252, 164 N.W. 241, recognizes the rule but holds it inapplicable because the postponement was to let in an intermediate estate. This appears to be the holding in Haviland v. Haviland, 130 Iowa 611, 105 N.W. 354, 5 L. R. A., N. S., 281. Atchison v. Francis, 182 Iowa 37, 50, 165 N.W. 587, 591, L. R. A. 1918E 1087, cites and discusses many of the foregoing and other decisions and states: "* * * a direction to pay over the remainder after the death of the life tenant, is treated as a sufficient expression of an intent to give a vested estate therein."

Bordwell, The Iowa Contingent Remainder Act (1925), 10 Iowa L. Bull. 89, 100 to 106, discusses the decisions and states at page 101, "It is believed that the case of Atchison v. Francis definitely marks the elimination from the Iowa law of the so-called 'Divide and Pay-Over Rule' as a criterion in determining whether a remainder is vested or contingent." At page 105 Professor Bordwell states the so-called rule "is now happily eliminated by Atchison v. Francis * * *." Swenson, Possessory Estates and Future Interests in Iowa (1950), 36 I. C. A. 73, 96, states a direction to divide and pay over does not render the remainder contingent, citing Atchison v. Francis, supra, and Hiller v. Herrick, 189 Iowa 668, 179 N.W. 113.

The "divide and pay over" rule is an artificial concept which sheds no light upon the basic question of expressed testatorial intent. In this jurisdiction its use has resulted in frequent confusion and in an incorrect result in the first division of In re Estate of Phearman, 211 Iowa 1137, 232 N.W. 826, 82 A. L. R. 674, and possibly in some other cases. We overrule the doctrine

of the first division of the Phearman case and hold the "divide and pay over rule" should not be given weight in determining the existence of a requirement of survival to the date of distribution.

With this question determined it is clear the will gives to Cora and Myrtle the charged legacies, the enjoyment of which is deferred during the life of testator's widow. There is no requirement of survivorship or other condition precedent attached to these remainders. Hence they vested at testator's death and were not destroyed by the deaths of Cora and Myrtle prior to the termination of the life estate of Mary Roberts. Sick v. Rock, 240 Iowa 584, 37 N.W.2d 305; second division of In re Estate of Phearman, 211 Iowa 1137, 1144, 232 N.W. 826, 829, 82 A. L. R. 674; Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650.

██ II. Section 614.17, Code of Iowa, 1946, provides, no action based upon any claim existing prior to 1930 shall be maintained to establish an interest, etc. in real estate against the holder of the record title in possession *"when such holder of the record title and his grantors immediate or remote are shown by the record to have held chain of title to said real estate, since January 1, 1930"*, unless the claimant within one year from July 4, 1943 file a statement of his claim in the office of the recorder of deeds. For the purpose of this section *"any person who holds title to real estate by will or descent from any person who held the title of record to such real estate at the date of his death or who holds title * * * under any * * * sheriff's deed, shall be deemed to hold chain of title * * *."* (Italics supplied.) In this case the remainder interests of Cora and Myrtle existed prior to 1930 and no statement of claim was filed in the office of the county recorder. Hence this statute would be applicable against Cora and Myrtle and their successors in interest. Lane v. Travelers Ins. Co., 230 Iowa 973, 299 N.W. 553.

The question is whether it may be invoked by and for appellants. Only those who possess a title which complies with the conditions of the statute are qualified to invoke its aid. Appellants are in possession of the property. But they and their grantors have not held the record chain of title since January 1, 1930, within the definition of the above-quoted and italicized language of the statute.

In Lane v. Travelers Ins. Co., 230 Iowa 973, 976, 977, 299 N.W. 553, 554, 555, the land went to sheriff's deed in 1910. A few days later the grantee conveyed it to Nora Kinney, who in 1913 deeded it to Margaret Lane. The decision states, "Appellant and its grantor, Margaret Lane, held record chain of title since * * * the deed from Nora Kinney in 1913." It will be noted the Lane case quotes from the statute "* * * any person who holds title * * * under any * * * sheriff's deed," and omits all other classifications set out in the statutes. It is clear the record title, which the court found sufficient in that case, was based upon the sheriff's deed.

In the case at bar the sheriff's deed did not issue until 1942. The mortgage was made by testator's widow and his son, Harry. The widow had a life estate only, in the land. Each daughter had a $2700 interest in the remainder. The interest of Harry in the remainder, assuming his acceptance of it, was subject to these prior interests. These matters were shown of record in the probate proceedings. Hence the widow and Harry never had the record title to the land, within the meaning of the statute. It follows appellants did not possess such title as qualified them to invoke the bar of Code section 614.17 against the successors in interest of testator's two daughters.—Affirmed.

All JUSTICES concur.