In the Matter of the ESTATE OF John RUHLAND, Deceased.

Elizabeth M. MEYLOR, Appellant,

v.

Doris RUHLAND, Renee Ruhland Hilger, William Ruhland, Michael Ruhland and Kyle Ruhland, Appellees.

Doris RUHLAND, Renee Ruhland Hilger, William Ruhland, Michael Ruhland and Kyle Ruhland, Plaintiffs,

v.

Arthur N. RUHLAND, Benedict J. Ruhland, Anthony M. Ruhland, and Lorina Ruhland Droessler, Defendants.

No. 89–22.

Supreme Court of Iowa.

March 21, 1990.

Charles F. Knudson of Knudson Law Firm, Marcus, for appellant.

William S. Sturgis, LeMars, and Joe Cosgrove, Yaneff & Cosgrove, Sioux City, for appellees.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This is a proceeding to construe the joint will of John and Elizabeth M. Ruhland. By this will a forty-acre farm in Plymouth county was devised. In paragraphs eleven and twelve, John's wife Elizabeth was devised a life estate in the forty acres. The disposition of the remainder interest forms the basis for this law suit.

Petitioner, Elizabeth M. Meylor, daughter of testators John and Elizabeth, claims

that she succeeded to the title upon the failure of the preceding remainder estate in her brother, Francis. The heirs of Francis claim the remainder arguing that the remainder to Francis did not depend on his surviving the life tenant. The trial court held that the remainder interest to Francis was a vested remainder subject to complete divestment. Elizabeth M. Meylor, petitioner, has appealed.

John Ruhland died in 1959; his son Francis died in 1971. John's wife, Elizabeth Ruhland, died in 1986. This proceeding for will construction is brought in the John Ruhland estate.

Paragraph eleven of the will provided: I John Ruhland hereby devise unto my wife, Elizabeth M. Ruhland, if she survive me, a life estate in all my real property during her lifetime, she to have the use, possession, rents and profits therefrom as long as she lives and be charged with the payment of the taxes.

Paragraph twenty of the will provided: I John Ruhland do hereby devise the remainder interests in the following described real estate, to wit; the northwest quarter (N.W.¼) of the northwest quarter (N.W.¼) of section thirty-five (35) in township ninety-one (91) north range forty-five (45), west of the 5th p.m., in Plymouth County, Iowa unto my son, Francis L. Ruhland providing he pay to my daughter, Elizabeth M. Meylor the sum of nine thousand ($9000) dollars within two years after the death of my wife, if she survive me, at the time of my death if my wife shall die first. In case my son Francis L. Ruhland shall fail to pay said nine thousand dollars to my said daughter within two years after said date of death of the survivor of us, then and in that case I devise the aforesaid real estate unto my daughter, Elizabeth M. Meylor absolutely and in fee simple, subject only to the life estate of my wife.

Other paragraphs of the will left property to the testator's other four children, all of whom survived the life tenant. No legal question is presented to us regarding property left to them. The heirs of Francis L. Ruhland tendered the sum of $9000 to Elizabeth M. Meylor after the death of Elizabeth M. Ruhland, which has been rejected pending the outcome of these proceedings.

In support of her position, Elizabeth makes three main arguments. First, that the payment of $9000 was a condition precedent as opposed to merely a charge or lien on the real estate, thus making the remainder a contingent remainder which was destroyed on the death of Francis before the termination of the life estate. Second, the language of the will demonstrates that the right to make payment was "personal" to Francis, to be performed by Francis only, thus imposing a condition precedent of survival. Third, the scheme of distribution shows the testator's intent that the property goes to Elizabeth M. Meylor rather than to the heirs of Francis. In response the heirs of Francis claim that the remainder to him was vested at the death of John Ruhland. They also assert that it is immaterial whether the remainder is contingent or vested because a contingent remainder has long been recognized as inheritable and devisable. They also claim that the will does not evidence an intent that only children of the testator shall take to the exclusion of heirs of the children.

The law of future interests, while ostensibly one of the least transient areas of law, has still undergone change. On whether intent of the testator is controlling one noted text writer has said:

One thing is clear: that no amount of intent that the legal consequences of a vested remainder will attach to an interest can make it a vested remainder, if certain requisites are absent. Nor will a remainder be contingent merely because a testator has said it is not to vest until a subsequent period. The test is not simply a matter of the intent to bring about the legal consequences of a vested or of a contingent remainder, as the case may be. It is true, the courts frequently say that the difference between a vested and contingent interest is a matter of intent. But, when that statement is made, it means, or should mean, that a remainder is vested or contingent depending on the existence or absence of an intent that

there be no condition precedent attached to the limitation.

Simes & Smith, *The Law of Future Interests* 2d ed. ¶ 140 at 125–26 (1936). In modern law, there is a dislike for contingent interests because they are thought to restrict alienability. As a result interests are construed as vested rather than contingent whenever possible. *See Fulton v. Fulton,* 179 Iowa 948, 951, 162 N.W. 253, 254 (1917); *Schrader v. Schrader,* 158 Iowa 85, 93, 139 N.W. 160, 163 (1912).

Yet in *Henkel v. Auchstetter,* 240 Iowa 1367, 1375, 39 N.W.2d 650, 654 (1949), we said:

> The favoritism for the vesting of remainders came about in order to nullify the many burdensome technicalities of the feudal system with respect to contingent remainders. Many of the reasons which generated the favoritism have long been nonexistent. It is no longer an important rule of construction, and should not be. As said by Justice Evans in *Fulton v. Fulton,* 179 Iowa 948, 966, 162 N.W. 253, 258, L.R.A.1918 E1080: "The dominant rule of construction with us is that the intent of the testator, as it is fairly gathered from the will, must prevail."

The "divide and pay-over rule," which held that a testamentary direction rendered a remainder contingent, was the basis for Iowa law for many years. That rule was eliminated by *Atchison v. Francis,* 182 Iowa 37, 50, 165 N.W. 587, 591 (1917). In *Lytle v. Guilliams,* 241 Iowa 523, 528–29, 41 N.W.2d 668, 671 (1950), we said:

> The "divide and pay-over rule" is an artificial concept which sheds no light upon the basic question of expressed testatorial intent. In this jurisdiction its use has resulted in frequent confusion and in an incorrect result in the first division of *In re Estate of Phearman,* 211 Iowa 1137, 232 N.W. 826, 82 A.L.R. 674, and possibly in some other cases. We overrule the doctrine of the first division of the *Phearman* case and hold the "divide and pay-over rule" should not be given weight in determining the exist-

ence of a requirement of survival to the date of distribution.

At common law a contingent remainder failed if the contingent remainderman did not live until the condition precedent had occurred. The principle was stated in *Schau v. Cecil,* 257 Iowa 1296, 1301, 136 N.W.2d 515, 519 (1965): "When one takes only a contingent remainder in real estate conditioned upon the happening of a future event he must live until the event occurs in order to take any interest in the real estate." Upon enactment of Iowa Code section 557.7 the principle was rendered obsolete; the common-law destructibility rule was itself destroyed. *See Davies v. Radford,* 433 N.W.2d 704, 705 (Iowa 1988).

Although for a time it was uncertain whether Iowa law embraced the "New York Rule," it is now clear that the common-law explanation of the difference between contingent and vested remainders has been the basis for our law. *Clarken v. Brown,* 258 Iowa 18, 23–24, 137 N.W.2d 376, 379 (1965); *Henkel v. Auchstetter,* 240 Iowa 1367, 1380–81, 39 N.W.2d 650, 657–58 (1949). In *Lincoln J.S.L. Bank v. Mitchell,* 239 Iowa 995, 33 N.W.2d 388 (1948), this court stated:

> In a vested remainder "the estate is invariably fixed to remain to certain determinate persons." A remainder is contingent "where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event."

*Id.* at 1000–01, 33 N.W.2d at 391 (quoting *Fulton v. Fulton,* 179 Iowa 948, 957, 162 N.W. 253, 256 (1917)). More often than not, however, a discussion in the cases of whether an interest is contingent or vested is irrelevant. The result is the same whether the court finds an interest contingent (*i.e.,* subject to a condition precedent that the taker survive until a certain time) or vested subject to being defeated by death before the time of distribution. In either case, the interest is destroyed when the taker fails to survive.

In light of the foregoing, the emphasis in case analysis should be placed upon determining what language in the dispositive

instrument will be construed as imposing a condition of survival. Two primary factors are involved. The first relates to the form of the particular limitation; the second to the construction of the language used therein. An adequate analysis requires taking fact situations and analyzing them separately.

In *Lytle v. Guilliams*, 241 Iowa 523, 41 N.W.2d 668 (1950), the testator willed his real property to his wife for life and that at the death of his wife his real property to be divided among his children as follows:

> I will to Harry Roberts all the personal property of my estate that may be remaining at the death of my wife, and all the real property above mentioned; and that out of the property above mentioned is to be paid to Cora Slinker, Two Thousand Seven Hundred ($2700) dollars, and to Myrtle Lytle, Two Thousand Seven Hundred ($2700) dollars.

*Id.* at 524, 41 N.W.2d at 669. After rejecting the "divide and pay-over rule" the court held that the will gave to Cora and Myrtle the charged legacies, the enjoyment of which was deferred during the lifetime of the testator's widow. The court emphasized that there was no requirement of survival or other condition precedent attached to these remainders. Hence, they vested at testator's death and were not destroyed by the deaths of Cora and Myrtle prior to the termination of the life estate of Mary Roberts. *Id.* at 529, 41 N.W.2d at 671.

In *Lytle* the salient fact was the premature death of the charged legatees. In *Sick v. Rock*, 240 Iowa 584, 37 N.W.2d 305 (1949), the remainderman failed to survive the life tenant in order to pay the legatees. There the testator devised his property to his wife for life, remainder to his son, Alfred "but upon the expressed condition that he shall within six months thereafter pay the sum of three thousand dollars in cash to each of my three daughters." *Id.* at 586, 37 N.W.2d at 306. There was a residuary clause running "in equal shares to my four children; and in the event any child shall predecease me, such share and devise shall go to its issue per stirpes."

*Id.,* 37 N.W.2d at 306. Plaintiffs claimed that since Alfred predeceased the life tenant and failed to make the $3000 payments, the farm became part of the residuary estate. The trial court held that Alfred acquired a vested remainder and his daughter's guardian could make the $3000 payments. In the event the parties refused the payments, then the payments were to be made to the clerk of court. Upon filing the clerk's receipt for the payments, the land would be released from the lien and charge thereon. *Id.,* 37 N.W.2d at 306. On appeal, the supreme court affirmed. The court found that the devise to Alfred was clear. There was no suggestion that its vesting was dependent upon payment of the amounts to his sisters or upon outliving his mother. Whether nonpayment would have resulted in a lien enforceable by foreclosure or in a divesting of the title was not determined since tender of payment was timely made. *Id.* at 587, 37 N.W.2d at 306. The court observed that a provision that a remainder shall pass to the remainderman, on the death of, or, at the death of, the life tenant, refers to the time of enjoyment and possession of the property by the remainderman and does not prevent the vesting of the remainder in fee on the death of the grantor, unless there is language requiring a different construction. The use of such words is not sufficient to indicate an intention to postpone vesting of an estate. *Id.* at 588, 37 N.W.2d at 307 (citing *Schrader v. Schrader*, 158 Iowa 85, 86, 139 N.W. 160, 161 (1912)).

In *Schrader* the testator willed a life interest in all his real estate to his wife. On the death of his wife his son George was to become the absolute owner of described real estate on the condition that "before George Schrader shall become the sole, absolute and unqualified owner of said real premises that he shall pay to my well-beloved son, Henry Schrader, the sum of five hundred dollars." *Schrader,* 158 Iowa at 86–87, 139 N.W. at 161. The supreme court held that the remainder to George was vested, charged with a payment to be made to Henry. The court noted that there was no limitation over upon failure to make payment, and nothing

suggested the testator contemplated a suspension of title between the death of the life tenant and the payment of the $500, circumstances supporting the view that the remainder was vested. *Id.* at 93, 139 N.W.2d at 163. *See also, In re Gray's Estate,* 27 N.D. 417, 423–24, 146 N.W. 722, 723–24 (1914). The court also found that the language "sole, absolute and unqualified ownership" and other expressions of like nature meant no more than that the title in the hands of George Schrader shall be subject to Henry's claim. Collectively, those and like words were not enough to prove an intent that the remainder devise be conditioned upon survivorship.

Other language has been found to be insufficient to indicate an intent that a devise be deemed contingent. In *Clarken v. Brown,* 258 Iowa 18, 137 N.W.2d 376 (1965), the testator devised a life estate to his brother, G.V. Clarken, and "at the death of my brother, G.V. Clarken, I devise and bequeath said above-described farm and land to my lawful heirs, as fixed by the statutes of the State of Iowa." *Id.* at 22, 137 N.W.2d at 379. Holding the remainder vested the court found nothing in the will to indicate to the contrary. The will "did not require 'my heirs' to be 'then living,' 'if living,' 'then in being,' 'if they survive,' 'surviving brothers or sisters,' or language of similar import expressing contingency." *Id.* at 24, 137 N.W.2d at 379–80.

By contrast, our court found a personal option in *In re Estate of Lemke,* 216 N.W.2d 186 (Iowa 1974). Here a life estate in a 170–acre farm was left to testator's wife. He then provided that his son Clarence E. Lemke should have the right and privilege to acquire the real property for $175 per acre within one year after the date of death of testator's wife. If he did not so elect then the property was devised to other sons. *Id.* at 187–88. Our court concluded that the testator's failure to include words of inheritance created a strong presumption he did not intend the option bequeathed to Clarence to be inheritable by him or his heirs and that the purely personal option failed on his death. *Id.* at 192.

In analyzing the language used by the testator in the case at bar, to discover what result was intended we see a number of different legal forms used. Bequests are made to various charities and persons. Life estates are given by the testators, John and Elizabeth Ruhland, to each other by paragraphs eleven and twelve. An outright devise in fee simple subject only to a life estate is made to son Arthur Ruhland in paragraph thirteen. No alternate devise is made in case Arthur failed to survive the life tenant. Similar devises are made to son Benedict, son Anthony and son Francis. In paragraph eighteen Francis L. Ruhland is directed to pay $1500 to the estate of the survivor of John and Elizabeth to be divided equally among the six children including Francis. Paragraph twenty-six directed the sale of a twenty-acre tract with the further direction that Francis "shall have an option to buy" the real estate for $6000. In case Francis elects not to purchase the twenty acres, the executors are directed to sell it and divide the proceeds among the six children including Francis.

From this assemblage of a variety of legal forms it is obvious that these testators chose very specific methods of disposing of their property to accomplish the purpose intended. Distinctions were made and used between a devise in fee simple, an option, a payment, and a charge. Gifts over were sometimes made, sometimes not. The significance of this attaches to the fact that nowhere in paragraph twenty is a proviso stated that Francis must survive the life tenant in order to obtain title to the remainder. Nor is any clear implication made that survivorship is required. We think that had the testator John Ruhland intended to make survivorship a condition precedent he would have done so by using appropriate and unmistakable legal language.

Petitioner argues that testator's use of the words "he pay," "my son Francis L. Ruhland shall fail to pay" and "Francis L. Ruhland shall make payments of nine thousand dollars" show an intent to make survival a condition precedent and that the election be made personally by Francis. She also claims support from our cases

that have cited a failure to provide an alternate devisee as an indication of intent to vest the remainder. In the case at bar, petitioner is the alternate devisee under paragraph twenty in case of a refusal to pay the $9000 provided, rather than in case of the death of the first taker.

Although we acknowledge the merit of these points in support of petitioner's argument we do not find them of sufficient vitality to persuade. We believe that viewing the language used in the entire will in light of our authorities cited leads to the conclusion that survivorship was not intended. Accordingly, we hold that paragraph twenty created a vested remainder in Francis L. Ruhland subject to divestment in the event $9000 is not paid to Elizabeth M. Meylor.

AFFIRMED.