# IN THE COURT OF APPEALS OF IOWA

No. 19-1586
Filed April 28, 2021

**JULIE A. KRAFT,**
        Plaintiff-Appellant,

**vs.**

**LARRY KRAFT, KENNETH KRAFT, DOUGLAS KRAFT, DONALD HIRSCHMAN, DAVID HIRSCHMAN, MYRON HIRSCHMAN, and FRANK HIRSCHMAN,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Plymouth County, Tod Deck, Judge.


        Julie Kraft appeals an adverse summary judgment ruling on her petition for partition and quieting of title.  **AFFIRMED.**


        Joel D. Vos of Heidman Law Firm, P.L.L.C., Sioux City, for appellant.

        Nathan J. Rockman and Brandon J. Krikke of Dekoter, Thole, Dawson & Rockman, P.L.C., Sibley, for appellees.


        Heard by Doyle, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Julie Kraft appeals an adverse summary judgment ruling on her petition for partition and quieting of title. She argues the court erred in determining the statutes of limitation contained in Iowa Code sections 614.17, 614.17A, 633.487 and 633.488 (2018) were applicable to bar her cause of action.

## I.     Background

In 1941, Ruth Foster obtained certain real property by way of warranty deed. In her last will and testament, dated 1962, Ruth devised said property as follows:

> to my daughter Frances I. Bainbridge for as long as she lives, and upon her death to Barbara H. Hirschman and Margaret A. Kraft or the survivor for as long as they shall live, and upon the death of the survivor to the children of Barbara H. Hirschman and Margaret A. Kraft share and share alike.

Ruth died in 1963. Her estate was opened shortly thereafter. Julie was born to Margaret, Ruth's daughter, in September 1964. The appellees include Julie's brothers—Larry, Kenneth, and Douglas Kraft—as well as her cousins and children to Barbara—Donald, David, Myron, and Frank Hirschman. The probate inventory filed in January 1965 listed the appellees as beneficiaries and heirs at law, but not Julie.

In February, a notice of time and place of appraisement for inheritance tax purposes was sent to all of the appellees, Margaret, and others. In December 1968, a final report and application for discharge was filed. Notice of hearing on the final report and application for discharge was provided to Barbara, Margaret, and others. An order approving the final report and closing Ruth's estate was entered in November 1969. In 1971, a report of change of title was entered and established title in "Larry Kraft, Kenny Kraft and Douglas Kraft; Donald Hirschman,

Frank Hirschman, David Hirschman and Myron Hirschman, subject to the life estate of Frances I. Bainbridge and upon her death life estate to Barbara H. Hirschman and Margaret A. Kraft or the survivor for as long as they shall live."

Julie reached the age of majority in 1981. Frances died in 1985, her life estate in the real estate terminated, and Barbara and Margaret's life estates commenced. Barbara died in 2004, and Margaret died in 2018. Shortly thereafter, Frank recorded affidavits of death terminating the life estates of Barbara and Margaret and noting the "real estate has passed to" the appellees. Roughly a month later, Julie filed an affidavit of death terminating life estates alleging she was a member of the class of beneficiaries to the real property and she "made this affidavit for the purpose of correcting affidavits prepared and filed by Frank Hirschman," which "incorrectly omitted [Julie] as a member of the class . . . because [she] was erroneously omitted from the probate inventory and final report."

In July, Julie filed a petition for partition and quieting of title in the district court, in which she alleged she was a member of the class of beneficiaries of the real property and requested an order quieting title and establishing her as owner of an undivided one-eighth interest in the property, partition of rent proceeds, and partition by sale. The appellees counterclaimed for quieting of title in them and slander of title. In April 2019, Julie moved for summary judgment on her claims. Shortly thereafter, the appellees moved for summary judgment on Julie's claims, asserting Julie's claims were barred by the statutes of limitations contained in Iowa Code sections 614.17, 614.17A, 633.487, and 633.488.

Following a hearing, the court granted the appellees summary judgment on Julie's claims.[1]  The court reasoned Margaret, as Julie's guardian, had notice of Julie's claim to or interest in the property before Julie was even born by virtue of Ruth's will and again at the closing of her estate in 1969, Margaret had a duty to preserve Julie's interest, and Margaret failed to do so.  The court also highlighted Julie's 1987 refusal to sign an affidavit relinquishing any interest in the property.  The court granted summary judgment pursuant to the statutes of limitations contained in Iowa Code sections 614.17, 614.17A, 633.487, and 633.488.

Julie appeals.[2]

## II.    Standard of Review

Appellate review of summary judgment rulings is for correction of errors at law.  *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019).  "A motion for summary judgment is appropriately granted when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"  *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 542 (Iowa 2019) (ellipsis in

---

[1] It appears the parties agreed the appellees' slander-of-title claim was not yet ripe for summary judgment.

[2] Following the filing of Julie's notice of appeal, the appellees filed a motion to enforce a settlement agreement in the district court.  Thereafter, the parties filed a joint motion to stay and extend appellate deadlines pending the district court's ruling on the motion to enforce.  The supreme court reserved ruling but directed Julie to file a statement as to whether the appeal was taken by matter of right and, if so, whether a limited remand is necessary for the district court to address the motion to enforce.  The court also directed the statement to address whether permission for interlocutory appeal should be granted in the event it is determined the appeal was not taken as a matter of right.  After receiving briefs from the parties, the court determined the appeal to be interlocutory but reserved ruling on whether to grant interlocutory review pending the district court's ruling on the motion to enforce.  The district court ultimately denied the motion to enforce, after which the supreme court granted interlocutory review.

original) (quoting Iowa R. Civ. P. 1.981(3)).  "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 230 (Iowa 2018) (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015)).  The record is viewed in the light most favorable to the nonmoving party and that party is granted all reasonable inferences that can be drawn from the record.  *Id.*  "Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts."  *Id.* (quoting *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 398 (Iowa 2017)).

### III.    Analysis

Julie challenges entry of summary judgment based on the statutes of limitations contained in sections 614.17 and 614.17A.  Section 614.17(1) provides, in relevant part, the following:

> (1) An action based upon a claim arising or existing prior to January 1, 1980, shall not be maintained, either at law or in equity, in any court to recover real estate in this state or to recover or establish any interest in or claim to real estate, legal or equitable, against the holder of the record title to the real estate in possession, when the holder of the record title and the holder's immediate or remote grantors are shown by the record to have held chain of title to the real estate, since January 1, 1980, unless the claimant in person, or by the claimant's attorney or agent, or if the claimant is a minor or under legal disability, by the claimant's guardian, trustee, or either parent, within one year from and after July 1, 1991, files in the office of the recorder of deeds of the county in which the real estate is situated, a statement in writing, which is duly acknowledged, definitely describing the real estate involved, the nature and extent of the right or interest claimed, and stating the facts upon which the claim is based.
> (2) For the purposes of this section, section 614.17A, and sections 614.18 to 614.20, a person who holds title to real estate by will or descent from a person who held the title of record to the real estate at the date of that person's death or who holds title by decree or order of a court, or under a tax deed, trustee's, referee's,

guardian's, executor's, administrator's, receiver's, assignee's, master's in chancery, or sheriff's deed, holds chain of title the same as though holding by direct conveyance.

Section 614.17A provides, in relevant part, the following:

> (1) After July 1, 1992, an action shall not be maintained in a court, either at law or in equity, in order to recover or establish an interest in or claim to real estate if all the following conditions are satisfied:
> (a) The action is based upon a claim arising more than ten years earlier or existing for more than ten years.
> (b) The action is against the holder of the record title to the real estate in possession.
> (c) The holder of the record title to the real estate in possession and the holder's immediate or remote grantors are shown by the record to have held chain of title to the real estate for more than ten years.

First, Julie claims the appellees have not held record title for the requisite durations—since January 1, 1980 under section 614.17(1) or for at least ten years under section 614.17A(1)(c)—to avail themselves of the statues. She cites *Lytle v. Guilliams*, a case in which Wesley died in 1910, and his will devised all of his personal property to his wife, Mary, and granted her a life estate in real property. 41 N.W.2d 668, 669 (Iowa 1950). Upon Mary's death, the real property and any remaining personal property would go to Wesley's son, Harry, out of which $2700 would be paid to each of Wesley's daughters, Cora and Myrtle. *Id.* Cora died in 1920, Myrtle in 1929, and Harry in 1939. *Id.* Mary outlived all of the children, dying in 1947. *Id.* In 1928, Mary and Harry granted a mortgage on the real estate, which was foreclosed upon in 1939. *Id.*

None of Cora and Myrtle's heirs were named as parties to the foreclosure action. Guilliams was the successful bidder at a sheriff's sale, and the property was conveyed to him by sheriff's deed in 1942; Guilliams died in 1945. *Id.* "Neither

of the $2,700 charges set up against the real estate by . . . the will was ever paid." *Id.* In 1948, the heirs and successors of Cora and Myrtle filed an action against the successors in interest of Guilliams and Harry. The defendants maintained the action was barred by section 614.17, which the district court rejected and entered judgment establishing charges against the real estate. *Id.*

Guilliams's successors appealed. At the time, Iowa Code section 614.17 (1946) provided no action based upon a claim existing prior to 1930 could be maintained to establish any interest in real estate or claim thereto

> against the holder of the record title to such real estate in possession, when such holder of the record title and his grantors immediate or remote are shown by the record to have held chain of title to said real estate, since January 1, 1930, unless such claimant . . . shall within one year from after July 4, 1943 [make the claim.]

The supreme court considered whether the appellants, Guilliams's successors, could invoke the statute to bar the action. *Id.* at 672. The court held Mary and Harry never had record title to the land within the meaning of the statute because Mary only had a life estate and Harry's remainder interest was subject to Cora and Myrtle's remainder interest. *Id.* Thus, Guilliams's successors did not have such sufficient title to invoke section 614.17 against the successors of Cora and Myrtle. *Id.*

But we find *Lytle* distinguishable. In *Lytle*, Mary's life estate did not expire before the foreclosure and ensuing sheriff's deed, which conveyed the real estate to Guilliams in 1942. Wesley was Harry's remote grantor. Wesley held the property in fee simple absolute, but his will only conveyed Harry a fee simple determinable, being subject to a life estate in Mary. Harry predeceased Mary and thus never became "the holder of the record title to such real estate in possession."

*See* Iowa Code § 614.17.  Neither did Mary, because she was only granted a life estate.  If Harry had outlived Mary, he would have become "the holder of the record title to such real estate in possession."  *See id.*  Because Harry's remainder interest was subject to conditions, he thus "never had the record title to the land."  *Lytle*, 41 N.W.2d at 672.  Had those conditions been satisfied, then Harry would have become a "person who holds title to real estate by will or descent" from a "person who held the title of record to such real estate at the date of his death," and he would then be "deemed to hold chain of title the same as through holding by direct conveyance" in fee simple absolute.  *See* Iowa Code § 614.17.  He would then thus have been deemed to have been directly conveyed the real estate at the time of Wesley's death in 1910 and would also be deemed to have "held chain of title to said real estate, since January 1, 1930."  *Id.*  Because Harry predeceased Mary, his interest would have reverted to Wesley's heirs at law upon Mary's death.

But when Harry and Mary's interests were extinguished by foreclosure, they became the remote or immediate grantors to Guilliams, when the property was conveyed to him in 1942 by sheriff's deed.  Because Harry could not yet be deemed to have "held chain of title to said real estate, since January 1, 1930," Guilliams, who obtained title by sheriff's deed, could only "be deemed to hold chain of title the same as though holding by direct conveyance" in 1942.  *See id.*  So Guilliams's heirs could not show they held chain of title since January 1, 1930, and thus could not use section 614.17 as a shield.

The circumstances before us are different from *Lytle*, namely because the appellees outlived the life estates.  As a result of Ruth's will and the omissions in the probate proceedings, title was established in the appellees amounting to a fee

simple determinable, subject to the life estates of Frances, Barbara, and Margaret. Title was never established in Julie. Ruth was the remote grantor. When the life estates terminated in 2018, no conditions remained precluding the appellees' title from converting to fee simple absolute, and the appellees became the "holder[s] of the record title to the real estate in possession." *See* Iowa Code § 614.17(1) (2018). And each of the appellees amount to a "person who holds title to real estate by will or descent from a person who held the title of record to the real estate at the date of that person's death" and each of them "holds chain of title the same as though holding by direct conveyance." *Id.* § 614.17(2). So they are deemed to have been directly conveyed the real property at the time of Ruth's death in 1963, which was before January 1, 1980. *See id.* § 614.17 (1), (2). Because Julie's claim arose or existed prior to January 1, 1980, and she failed to forward it before one year from July 1, 1991, her action "shall not be maintained . . . in any court" and is therefore barred by section 614.17. Applying the same logic, it is also barred by section 614.17A.

Julie goes on to claim, "These statutes do not apply to the matter at hand because both plaintiff and defendants are holders of record title under the same instrument." While there is no dispute Julie was intended to be a member of the class of beneficiaries, she ultimately was not, and she has never held any title to the property. Section 614.17, "although of a limitation nature, is more than a statute of limitations. Its purpose is to give effect and stability to record titles." *Tesdell v. Hanes*, 82 N.W.2d 119, 121 (Iowa 1956) (citations omitted). It bars "potential claims arising out of irregularities in a chain of title to real property where no claim is filed based on said irregularity by the date stated in [the] statute." *Id.*

at 122. That is exactly what we have here, a claim by Julie based on an irregularity in the estate proceeding resulting in her ultimate omission as a beneficiary. And the fact that Julie was a minor when the regularity occurred is of no consequence. *Id.* at 122.

Julie also asserts the statutes of limitations did not begin to run as between remaindermen until the termination of the final life estate. We disagree. The limitations period begins to run when a claim arises or exists, which is "when the interest appears of record, not when it vests, becomes possessory, or becomes actionable." *In re Estate of Hord*, 836 N.W.2d 1, 7 (Iowa 2013).

We also reject the claim the court erred in focusing on the certificate of change of title as opposed to the will, which included her as a beneficiary. The certificate following the closure of the estate proceeding is sufficient "[d]ocumentary evidence of title." *See Muniment of Title*, *Black's Law Dictionary* (11th ed. 2019). Julie also claims the appellees never had record title to her undivided one-eighth interest in the property under the will. But we agree with the appellees that the record interest was created in the probate proceeding and finalized by the certificate of change of title following closure of the estate.

Lastly, Julie claims application of sections 614.17 and 614.17A "would not further their goals and would lead to an absurd and disastrous result." We conclude application of the statutes here serve their purpose—"to give effect and stability to record titles." *Tesdell*, 82 N.W.2d at 121. Julie or her mother were on constructive notice that the irregularities in the estate proceeding resulted in her not being a beneficiary. No action was taken, so destabilizing the record of title now would be contrary to the legislature's intent.

We affirm the entry of summary judgment pursuant to sections 614.17 and 614.17A.  We find it unnecessary to address the alternative grounds for summary judgment relied upon by the district court.

**AFFIRMED.**